836 A.2d 20

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Lamont OVERBY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 8, 2002.

Decided Nov. 19, 2003.

Reargument Denied Jan. 6, 2004.

228

Jules Epstein, Garden City, NY, for Lamont Overby.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for Com.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice CAPPY.[1]

This is a direct appeal from the judgment of sentence of death following Appellant's convictions for first degree murder, 18 Pa.C.S. § 2502(a), and possession of an instrument of crime (PIC), 18 Pa.C.S. § 907.[2] We affirm.

The facts, as set forth by the trial court, are as follows:

[O]n August 27, 1996, the decedent, John James and his friend, Caesar Cross, were sitting on the steps of 2054 Reed Street drinking beer and talking. It was early afternoon and there were a number of people gathered in the general area.

[Appellant] approached the two young men, said hello, and continued walking. Suddenly, [Appellant] pulled a gun, turned and began shooting at James and Cross.

The decedent, John James alerted his friend, Caesar Cross, to the trouble and urged him to run. Both men ran, however, James was shot in the back and fell in the street.

1. The opinion was reassigned to this author.

2. In addition to the sentence of death, Appellant was also sentenced to a consecutive term of imprisonment of 2½—5 years for the PIC conviction.

[Appellant] stood over his victim and fired 4 more shots into him. [Appellant] fled the area, but was arrested the next day. An arrest warrant was issued largely on the identification provided by Caesar Cross who knew [Appellant] from the neighborhood. A second witness, Reginald Ector, who was in the area on business, also witnessed the killing and identified [Appellant] as the shooter.

[Appellant] did not testify, but presented his grandmother, Helen Overby, who provided an alibi for [Appellant]. She testified that [Appellant] was several blocks away from the crime scene at the time of the killing working on his mother's home.

Tr. Ct. Opin. dated 3/16/01 at 2–3.[3]

The jury found one aggravating circumstance, that Appellant had a significant history of felony convictions involving the use or threat of violence to the person (42 Pa.C.S. § 9711(d)(9)), and one mitigating circumstance, that Appellant was under the influence of extreme mental or emotional disturbance (42 Pa.C.S. § 9711(e)(2)). The jury determined that the aggravating circumstance outweighed the mitigating circumstance and sentenced Appellant to death. This appeal followed.

 Although Appellant has not challenged the sufficiency of the evidence, this court reviews the sufficiency of the evidence underlying the first degree murder conviction in all capital cases. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). In so doing, the court must decide whether the evidence admitted at trial, and all reasonable inferences drawn therefrom in favor of the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. *Commonwealth v. Tharp,* 574 Pa. 202, 210, 830 A.2d 519, 523 (2003). Evidence is sufficient to sustain a conviction for first degree murder when it establishes that a human being was

**3.** A mistrial was declared in the first trial in this matter on May 20, 1997. The case was tried again commencing on July 16, 1998, and resulted in the present convictions.

unlawfully killed, that the accused is responsible for the killing and that the accused acted with specific intent. 18 Pa.C.S. § 2502(a); *Commonwealth v. Tharp*, 574 Pa. 202, 210, 830 A.2d 519, 523 (2003). A specific intent to kill may be inferred from the defendant's use of a weapon on a vital part of the victim's body. *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 311 (1995). The evidence here demonstrates that Appellant purposefully shot the victim multiple times while the victim was lying in the street. The victim was shot twice in the back, twice in the abdomen and once in the chest; any of the wounds were potentially fatal. This evidence was more than sufficient to support the first degree murder conviction.

Appellant has raised several issues relating to trial counsel's ineffectiveness in this appeal.[4] Pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), three claims of trial counsel's ineffectiveness should be deferred to the collateral stage.[5] These claims are dismissed without

4. The three ineffectiveness claims are as follows:
 (1) Appellant was deprived of the effective assistance of counsel and a fair trial when the trial judge, without objection, failed to instruct the jury that *all* of the elements of first degree murder must be proved beyond a reasonable doubt.
 (2) Appellant was denied the effective assistance of counsel, and a fair trial, when trial counsel failed to object to the trial court's "life-qualification" questions during jury selection, as the court's question identified only those potential jurors who were completely incapable of imposing a sentence of life imprisonment, and thus failed to identify potential jurors who might have substantial difficulty applying the law and returning a sentence of life imprisonment in an appropriate case.
 (3) Trial counsel deprived Appellant of a fair trial and one with a reliable verdict when he (a) failed to secure a line-up or an appropriate curative instruction for an eyewitness who viewed Appellant, in the courtroom, years after the crime; and (b) failed to impeach one eyewitness with indisputable evidence.

5. In *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003), this court recognized an exception to the general rule in *Grant* and determined that it would address claims of trial counsel's ineffectiveness when those claims had been raised and preserved in the trial court; new counsel in post-sentence motions raised the same claims of trial counsel ineffectiveness as those raised on appeal to this court; the trial court held evidentiary hearings on the post-sentence motions during which trial counsel testified; and the trial court addressed the ineffectiveness claims in its opinion. We reasoned that "the concerns that led

prejudice to Appellant's right to pursue these claims via a petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*

In two of Appellant's claims, he asserts that improper comments by the prosecutor constituted prosecutorial misconduct and deprived him of a fair trial. He also contends that trial counsel was ineffective in failing to object to any of these statements. Because there is no claimed error on the part of the trial court, and because application of the relaxed waiver doctrine would entail a consideration of the claim as if it had been advanced under the rubric of ineffective assistance of counsel, these claims are more properly addressed in the context of trial counsel's ineffectiveness. *See Commonwealth v. Watkins,* —— Pa. ——, —— A.2d ——, ——, 2003 WL 21305268 at *12 (Pa. June 6, 2003). Therefore, these claims should also be deferred to the collateral stage, and are dismissed without prejudice to pursue these claims via a PCRA petition. *Id.*

Finally, one of Appellant's issues alleging various errors in the trial court's instructions is raised both substantively as well as in terms of counsel's ineffectiveness in failing to object to the erroneous language and/or failing to secure case-appropriate instructions. Although not preserved below, we will address the claims relating to trial court error under the relaxed waiver doctrine, *Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385 (2003) (abrogating relaxed waiver rule

this Court in *Grant* to abrogate the *Hubbard* doctrine and adopt the new general rule deferring consideration of claims of ineffective assistance of trial counsel to collateral review are simply not present in this context." *Id.* at 853.

In the instant matter, no post-sentence motions were filed. *See* Tr. Ct. Opin. dated 3/16/01 at 3. Subsequent to the appeal, trial counsel withdrew and new counsel was appointed. New counsel raised issues of trial counsel's ineffectiveness. Because these issues were not raised before the trial court previously, the case was remanded for an opinion. *See* Tr. Ct. Opin. dated 5/23/01 at 1. However, as the trial court noted, "[t]he matter was not remanded for an evidentiary hearing or trial counsel's strategy or reasons for his conduct." *Id.* Consequently, the *Bomar* exception to the rule in *Grant* does not apply.

234

prospectively only), and defer the ineffectiveness claims pursuant to *Grant.*

■ Appellant first claims that he was deprived of a fair trial by the trial court's erroneous instruction on malice because the jury instruction improperly "equated malice with intent" (Appellant's brief at 21), thereby reducing the Commonwealth's burden of proof. This claim is meritless.

■ "It is axiomatic that a jury charge is to be read as a whole and that the trial court has broad discretion in phrasing its instructions so long as the law is clearly, adequately and accurately presented to the jury." *Commonwealth v. Bridges,* 563 Pa. 1, 757 A.2d 859, 876 (2000) (citation omitted). In the instant case, the trial court instructed that first degree murder involved both specific intent to kill and malice, and then explained the three mental states which comprise malice:

First degree murder in Pennsylvania is murder where the killer has the specific intent to kill and it's done with malice. Malice in Pennsylvania has a special meaning. It does not mean simple ill will. Malice is a shorthand way of referring to the three different mental states that the law requires as being bad enough to make a killing murder. Thus, a killing is with malice if the killer acted, first, with an intent to kill, or second, an intent to inflict serious bodily harm, or third, a wickedness of disposition, hardness of heart, cruelty, recklessness of consequence, and a mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life. A conscious disregard of an unjustified and extremely high risk that his action might cause death or serious bodily harm.

N.T. 7/20/98 at 101–02. Shortly thereafter, the court explained that third degree murder involved malice, and distinguished first degree murder from third degree murder: "first degree murder requires the specific intent to kill. Third degree murder does not require the specific intent to kill." N.T. 7/20/98 at 104. As the trial court did not err in its instruction on malice, this claim fails.

Appellant further contends that the instruction permitted a conviction for first degree murder even in cases of justifiable homicide. The record, however, indicates that the court instructed the jury that "a killing by a person who has the specific intent to kill is a killing with malice provided it's without circumstances reducing the killing to voluntary manslaughter or lawful justification or excuse." N.T. 7/20/98 at 102–03. Appellant is not entitled to relief on this claim.

Appellant next asserts that the trial court failed to instruct the jury on the significance of Commonwealth witness Cross' aliases, crimen falsi convictions, probationary sentences, open criminal charges and juvenile and criminal records. In fact, the trial court expressly instructed the jury that a witness' prior convictions should be considered in assessing "all or part" of that witness' testimony, noting that the jury could consider "the type of crime committed, how long ago it was committed and how it may affect the likelihood that he or she has testified truthfully in this particular case." N.T. 7/20/98 at 96–97. The court also explained that a witness' open criminal charges or probationary status could indicate bias or motive to testify falsely. N.T. 7/20/98 at 86–87. As the court's instructions adequately advised the jury on the concerns that Appellant raises, this claim fails.

Pursuant to 42 Pa.C.S. § 9711(h)(3)(i)-(ii), this court must affirm the sentence of death unless we determine that: (i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the findings of at least one aggravating circumstance. After review of the record, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. Moreover, the stipulation regarding Appellant's three prior felony convictions for intimidation of a witness, robbery and aggravated assault, N.T. 7/21/98 at 27–28, was sufficient evidence to support the jury's finding of the § 9711(d)(9) aggravating circumstance.

236

Accordingly, the judgment of sentence is affirmed.[6]

Former Chief Justice ZAPPALA did not participate in the decision of this case.

---

6. The Prothonotary is directed to transmit the complete record to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).