J-A25043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID SATCHELL, | : | |
| | : | |
| Appellant. | : | No. 1305 EDA 2017 |

Appeal from the PCRA Order, March 29, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0004687-2008.

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED DECEMBER 31, 2018**

David Satchell appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), following his conviction for third-degree murder and related offenses. 42 Pa.C.S.A. §§ 9541-9546. We affirm.

Satchell's convictions were the result of his participation in a gunfight on a crowded street in Philadelphia that caused the death of one innocent bystander and serious bodily injury to another. The trial court sentenced him to an aggregate term of 29 to 62 years of imprisonment. In an unpublished memorandum filed on September 10, 2010, we affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal on June 6, 2011. *Commonwealth v. Satchell*, 13 A.3d 978 (Pa. Super. 2010), *appeal denied*, 21 A.3d 677 (Pa. 2011).

Satchell filed a *pro se* PCRA petition on September 16, 2011, in which he raised claims of the ineffective assistance of both trial and appellate counsel. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on December 19, 2014. Thereafter, the Commonwealth filed a motion to dismiss. On May 2, 2015, the PCRA court issued Pa.R.Crim.P. 907 notice of its intention to dismiss the amended PCRA petition without a hearing. Satchell filed a response. By order entered June 5, 2015, the PCRA court dismissed the petition.

Satchell filed a timely appeal to this Court. In an unpublished memorandum filed on November 10, 2016, we agreed with the PCRA court that Satchell's claim of trial counsel's ineffectiveness lacked merit. ***See Commonwealth v. Satchell***, 2016 WL6649241 (Pa. Super. 2016). The panel majority, however, agreed with Satchell that his claim of appellate counsel's ineffectiveness had arguable merit.[1] Specifically, he claimed that appellate counsel failed to raise on appeal his entitlement to a jury instruction on the crime of involuntary manslaughter. The panel majority reasoned:

> "[I]f any version of the evidence in a homicide trial, from whatever source, supports a verdict of involuntary manslaughter, then the offense has been made an issue in the case, and a charge on involuntary manslaughter must be given if requested." ***Commonwealth v. Draxinger***, 498 A.2d 963, 965 (Pa. Super. 1985); ***see also***

---

[1] President Judge Emeritus Stevens dissented and would have affirmed the denial of post-conviction relief.

- 2 -

> *Commonwealth v. McCloskey*, 656 A.2d 1369, 1372 (Pa. Super. 1995).
>
> Involuntary manslaughter is found where "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, of the doing of a lawful act in a reckless or grossly negligent manner, [the defendant] causes the death of another person." 18 Pa.C.S.A. § 2504. At trial, the Commonwealth called Derrick Williams, a close acquaintance of Satchell, who testified that he saw Satchell, with two other men, firing at another group of men through a crowded street. As such, there was evidence in the record that Satchell fired his gun in a recklessly or grossly negligent manner, causing the death of the victim. The Commonwealth argues that because Satchell himself testified that he never fired his gun, no evidence was produced on record by Satchell that would justify an involuntary manslaughter instruction. It asserts that the two cases raised by Satchell in his brief, *Draxinger* and *McCloskey*, are both distinguishable because, in those cases, the defendant admitted to a version of events in which he perpetuated a reckless and grossly negligent act.
>
> The Commonwealth misreads the application of evidence in the record to involuntary manslaughter instructions laid out in *Draxinger*. In that case, this Court held that evidence "**from whatever source**" would support the instruction. *Draxinger*, *supra* (emphasis added). Here, the Commonwealth called witnesses who testified that Satchell was in the area of the gunfight with a loaded firearm, with at least one witness testifying that he saw Satchell shooting the weapon in a crowded street. Satchell's testimony alone cannot be dispositive, as the evidence in the record supporting the instruction can come from any witness. Therefore, based on the evidence in the record, the jury could reasonably have found Satchell guilty of involuntary manslaughter. As such, there is arguable merit to Satchell's claim that the trial court erred by not giving this instruction.

*Satchell*, unpublished memorandum at 4-6. Because the PCRA court

dismissed Satchell's amended petition without a hearing, we remanded so that

the court could "hold an evidentiary hearing to determine whether Satchell's appellate counsel had a reasonable basis for failing to raise the involuntary manslaughter claim on appeal and whether Satchell suffered prejudice as a result of that failure." *Id.* at 8.

The PCRA court held an evidentiary hearing on March 20, 2017. Appellate counsel testified that he believed the focus of the appeal should be limited to those issues which had the strongest possibility of success. Thus, he believed the best approach to Satchell's appeal was a sufficiency claim, due to the absence of malice to support a third-degree murder conviction, coupled with a claim that the trial court erred in failing to give a voluntary manslaughter instruction. *See* N.T., 3/20/17, at 7-20. Based upon his review of recent case law, counsel opined that a request for a jury instruction on involuntary manslaughter would not have been successful, and such a claim would dilute the strength of his two other issues. *Id.* Finally, appellate counsel stated that, although he was not aware of the *Draxinger* decision, had he known of it, his appellate strategy would not have changed. *Id.*

On March 29, 2017, the PCRA court concluded that appellate counsel had a reasonable basis to strategically emphasize and pursue a claim based upon voluntary manslaughter rather than involuntary manslaughter, given the facts presented, *i.e.*, a "shootout between two competing gangs on the streets of Philadelphia." N.T., 3/29/17, at 14. This timely appeal followed. Both Satchell and the PCRA court have complied with Pa.R.A.P. 1925.

Satchell raises the following issues:

1. Did the PCRA Court err by holding prior appellate counsel had a reasonable basis for failing to argue on direct appeal that the trial court erred in failing to charge the jury with involuntary manslaughter?

2. Did the PCRA Court err in denying Satchell PCRA relief in light of the law of the case doctrine established by this Court at 2005 EDA 2015?

*See* Satchell's Brief at 2.

Our scope and standard of review is well settled:

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

In his prior appeal, Satchell raised a claim of ineffective assistance of appellate counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate

that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted). A petitioner asserting ineffectiveness based upon strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized." *Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993). "We do not employ a hindsight analysis in comparing counsel's actions with other efforts he [or she] may have taken." *Stewart*, 84 A.3d at 707. A PCRA petitioner is not entitled to post-conviction relief simply because a

chosen strategy was unsuccessful. **Commonwealth v. Buksa**, 655 A.2d 576, 582 (Pa. Super. 1995).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." **Stewart**, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" **Id.** (quoting **Commonwealth v. Rathfon**, 899 A.2d 365, 370 (Pa. Super. 2006).

Regarding the first prong of the test, this Court has already determined that Satchell's claim of appellate counsel's ineffectiveness had arguable merit. Regarding the second and third prongs, the Honorable M. Teresa Sarmina has prepared a thorough and well-reasoned opinion that explains why appellate counsel's chosen strategy was reasonable, and why the alternatives suggested by Satchell did not offer "a potential for success substantially greater than the tactics utilized" by appellate counsel. **Clark**, **supra**. After careful review, we agree.[2]

In addition, we note that in reaching this conclusion, Judge Sarmina did not violate the "law of the case" doctrine. She does not take issue with our prior determination that the **Draxinger** decision gave arguable merit to

---

[2] Judge Sarmina further concluded that Satchell could not establish the prejudice prong of the ineffective assistance test. **See** PCRA Court Opinion, 8/10/17, at 11 n.24.

Satchell's ineffectiveness claim. Just because an involuntary manslaughter charge might have been appropriate does not automatically render appellate counsel ineffective for failing to appeal the trial court's failure to give that charge. As noted, appellate counsel may have had good reason for failing to appeal this issue. After hearing counsel's testimony, as we directed in our prior memorandum, Judge Sarmina concluded counsel's strategy on appeal was reasonable.

We therefore adopt Judge Sarmina's August 10, 2017 opinion as our own in disposing of the present appeal. The parties are directed to attach a copy of the trial court opinion to this memorandum in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/18

# PHILADELPHIA COURT OF COMMON PLEAS
## CRIMINAL TRIAL DIVISION

COMMONWEALTH :

                       CP-51-CR-0004687-2008

            :

v.

          **FILED** :      Superior Court Docket
                            No.: 2005 EDA 2015

DAVID SATCHELL      AUG 1 0 2017

          Office of Judicial Records
          Appeals/Post Trial



CP-51-CR-0004687-2008 Comm v Satchell, David
Opinion

7986892271

Sarmina, J.                   :
August 10, 2017

                 **OPINION**

## PROCEDURAL HISTORY:

On June 17, 2009, following a jury trial[1] before this Court, David Satchell (hereafter, petitioner) was convicted of murder of the third degree (H-3), criminal conspiracy (F-1), aggravated assault (F-1),[2] and possessing instruments of crime (M-1)(PIC).[3] Sentencing was deferred until August 3, 2009, at which time petitioner was sentenced on five charges to a cumulative term of not less than 27 years nor more than 58 years in prison.[4] Notes of Testimony (N.T.) 8/3/09 at 19-20.

---

[1] At trial, petitioner was represented by James Lammendola, Esquire

[2] The aggravated assault was charged separately, under CP-51-CR-0004694-2008 The remaining charges were as to CP-51-CR-0004687-2008 Petitioner's PCRA petition was filed only as to CP-51-CR-0004687-2008, and Superior Court's remand only concerned 51-CR-0004687-2008

[3] 18 Pa C S §§2502(c), 903, 2702(a)(1), and 907(a), respectively During the trial, but prior to the commencement of evidence, petitioner pled guilty to the charge of carrying a firearm without a license, 18 Pa C S § 6106 N.T. 6/17/09 at 10 It was agreed that, if petitioner was convicted by the jury, petitioner would proceed by way of bench trial as to the charge of persons not to possess firearms (F-2), 18 Pa C.S. 6105 Id. at 10-12 Petitioner proceeded in this fashion, and the Court found him guilty of this charge N T 8/3/09 at 20

[4] For the charge of third degree murder, petitioner was sentenced to a term of not less than 18 years nor more than 40 years in prison As to the charge of criminal conspiracy, petitioner was sentenced to a concurrent term of not less than 7 years nor more than 14 years in prison As to the charge of persons not to possess firearm, petitioner was sentenced to a consecutive term of not less than 2 years nor more than 4 years in prison As to the charge of firearms not to be carried without a license, petitioner was sentenced to a concurrent sentence of not less than 2 years nor more than 4 years in prison As to the charge of PIC, petitioner was sentenced to a concurrent term of not less than 1 year nor more than 5 years confinement. As to CP-51-CR-0004694, on the charge of aggravated assault, petitioner was sentenced to a consecutive term of not less than 7 years nor more than 14 years in prison N T 8/3/09 at 19-20

On August 11, 2009, pursuant to the Commonwealth's motion to reconsider, petitioner's sentence was vacated,[5] and, on that same date, this Court re-sentenced petitioner to a cumulative term of not less than 29 years nor more than 62 years in prison.[6]

Petitioner did not file post-sentence motions. Petitioner filed a timely notice of appeal to Superior Court on September 1, 2009.[7] On September 10, 2010, Superior Court affirmed petitioner's judgment of sentence, and on June 6, 2011, our Supreme Court denied petitioner's petition for allowance of appeal.[8]

On September 16, 2011, petitioner filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA).[9] Counsel was appointed,[10] and, on December 19, 2014, filed an amended petition on petitioner's behalf. On February 23, 2015, the Commonwealth filed a motion to dismiss.

After considering the issues and reviewing the filings, on May 4, 2015, this Court sent petitioner notice of its intent to deny and dismiss his PCRA petition without a hearing pursuant to

---

[5] The basis for re-sentencing was that petitioner's original sentences were all mistakenly in the mitigating range. N T 8/11/09 at 3

[6] As to the charge of criminal conspiracy, petitioner was sentenced to a concurrent term of not less than 9 years nor more than 18 years in prison. As to the charge of persons not to possess firearms, petitioner was sentenced to a consecutive term of not less than 4 years nor more than 8 years in prison. As to the charge of firearms not to be carried without a license, petitioner was sentenced to a concurrent sentence of not less than 2 years nor more than 4 years in prison As to the charge of PIC, petitioner was sentenced to a concurrent term of not less than 9 months nor more than 5 years confinement. The sentences for murder in the third degree and carrying a firearm without a license were unchanged. N.T. 8/3/09 at 10-12. As to CP-51-CR-0004694, the charge of aggravated assault, petitioner was sentenced to a consecutive term of not less than 7 years nor more than 14 years in prison Id at 19-20.

[7] James Lammendola, Esquire, continued to represent petitioner on appeal

[8] Commonwealth v. Satchell, No 2752 EDA 2009 (Pa Super, Sept 10, 2010) (memorandum opinion), *allocatur denied*, No 599 EAL 2010 (Pa , June 6, 2011)

[9] 42 Pa.C S §§ 9541-9546

[10] Joseph Scott O'Keefe, Esquire, (now Judge O'Keefe) was appointed to represent petitioner on collateral attack, but was permitted to withdraw by the Court upon his appointment to the bench on the Philadelphia Court of Common Pleas Thereafter, on July 20, 2012, Earl Kauffman, Esquire, was appointed to represent petitioner Counsel failed to make a filing in this PCRA matter, and the Court therefore had Mr Kauffman removed as PCRA counsel Todd Michael Mosser, Esquire, was then appointed to represent petitioner on September 2, 2014 Notwithstanding his removal as counsel, Mr. Kauffman proceeded to file a Finley letter on October 3, 2014, which was not considered by this Court.

2

Pa.R.Crim.P. 907 (907 Notice). Consistent with its 907 Notice, the Court dismissed petitioner's PCRA petition on June 5, 2015. Petitioner appealed, and on November 10, 2016, Superior Court remanded the petition for this Court to determine if appellate counsel had a rational basis for not raising a claim that this Court erred in refusing to charge the jury on involuntary manslaughter This Court therefore held an evidentiary hearing on March 20 and 29, 2017, and, finding that appellate counsel had had a reasonable basis in not pursuing the matter on appeal, this Court dismissed the petition on March 29, 2017 in open court. This timely appeal followed.

**FACTS[11]**

On May 20, 2007, at 2 p.m , 54-year-old Ronald Kennel (victim) was shot at the intersection of 16th and York Streets in North Philadelphia. N.T. 6/15/09 at 137. While leaving the Red Top Bar, the victim was caught in the crossfire of a gunfight N.T. 6/15/09 at 79, N.T. 6/16/09 at 41-42. He died from a single gunshot wound to the head. N.T. 6/16/09 at 13. Charlene McDonald was also injured during the incident Id. at 73-76. She was standing at the 16th and York Street bus stop when the gunshots were fired. Id at 72, 77. As Ms. McDonald tried to run, she was shot in her right leg. Id. at 73-75. She spent three days in the hospital and another two years in physical therapy. Id. at 76.

That afternoon, the residents of 16th and York Streets were hosting a barbecue competition. N T. 6/16/09 at 24. Over 30 people were outside preparing for the event. Id. at 31. At 2 p.m., petitioner and two other men were seen walking west on York Street towards 17th Street. Id. at 24-25. Before the shooting occurred, a neighborhood resident phoned 911, and described a man whom the evidence indicated was petitioner: "Young man walking with a gun…green shirt with white shirt underneath, wearing blue jeans, light-skinned, just scared half the neighborhood " N.T 6/16/09 at

---

[11] These facts are re-presented here (from this Court's previous opinion to Superior Court on this matter, dated November 3, 2015) for ease of disposition

3

154; N.T. 6/17/09 at 40-41. As petitioner passed by, people yelled, "Get the kids in the house. They have guns." Id. at 24, 30. Within moments, gunshots were fired through the crowded area N.T. 6/16/09 at 24, 31. Petitioner and his two friends fired shots on York Street towards 17th Street. N.T. 6/15/09 at 130. Sixteen .40 millimeter fired cartridge casings were recovered near the intersection of York and Bancroft Streets.[12] Id. at 116-18. A second set of shooters, near 17th Street, fired shots towards 16th Street. N.T. 6/15/09 at 130. Four .9 millimeter fired cartridge casings were found on the northeast corner of 17th and York Streets. Id. at 113; N.T. 6/16/09 at 111-12. The bullet recovered from the victim's head indicated that the bullet that killed him was from a 38/9 millimeter firearm.[13] N T 6/16/08 at 114-15.

Derrick Williams saw petitioner fire his gun into the crowd. N.T. 6/15/09 at 130, 140. Mr. Williams also saw petitioner with two guns: one was "chrome and brown, then he had this automatic that was black, but it had this long clip that looked like it would hold 40 rounds." Id at 136. After the exchange of gunfire, petitioner and his two friends ran towards Bancroft Street. Id. at 143-44.

Petitioner tried unsuccessfully to enter two private homes on Bancroft Street First, he approached Tracy Lester's home at 2402 Bancroft Street. N.T. 6/16/09 at 25; N.T. 6/15/09 at 47. Ms. Lester observed petitioner wearing a green shirt with a white thermal top underneath and saw that he had a gun in his hand as he tried to enter her home. Id at 25, 33, 36, 49. Ms. Lester held her door closed as petitioner tried to push his way in. N T. 6/16/09 at 33.

Petitioner next tried to enter Daisy Coffey's home at 2404 Bancroft Street. N.T. 6/15/09 at 47, 56. Ms Coffey lived next door to Ms. Lester. N.T. 6/15/09 at 47. As petitioner tried to enter

---

[12] Bancroft Street is located between N 16th Street and N 17th Street It is closer to 16th Street where petitioner was seen walking

[13] Thus, based on the physical evidence at the scene, the gunshot that killed the decedent came from the group shooting at petitioner and his cohorts and not from petitioner's firearm N T 6/16/09 at 114-118.

4

Ms. Coffey's house, she held her glass security door closed and told him, "you not coming in here." Id. at 47-50. Petitioner had a silver gun in his hand. Id. at 47, 51, 62. When he could not enter the premises, petitioner jumped over Ms Coffey's gate into her yard, but hopped right back out after finding a pit bull in Ms. Coffey's back yard. Id. at 49, 57.

Later that evening, at Temple University Hospital, Ms. Lester identified petitioner as one of the shooters to Officer Nona Stokes and described what he had been wearing. N.T. 6/16/09 at 36, 48-49. Petitioner was not arrested until December 19, 2007.[14]

## LEGAL ANALYSIS:

Petitioner claims on appeal that this Court erred when it did not find that prior appellate counsel was ineffective for failing to include in his appeal a request for a charge of involuntary manslaughter based on Commonwealth v. Draxinger, 498 A.2d 963 (Pa.Super. 1985), in support of the proposition that an involuntary manslaughter instruction should have been given at petitioner's trial.[15] 1925(b) Statement 5/19/17 at 1.

At the hearing, Michael Diamondstein, Esquire, the attorney who handled petitioner's direct appeal, conceded he was not familiar with Draxinger until he was contacted in connection with the hearing. N.T. 3/20/17 at 13.[16] However, because the cases Mr Diamondstein did rely on established he had a reasonable basis for not pursuing this issue on appeal, petitioner's claim fails.

---

[14] At the time of his arrest seven months later, Petitioner had a fully loaded black 40 caliber firearm. N T 6/16/09 at 59. A firearms expert testified that this gun was not responsible for any of the bullets fired on May 20, 2007. Id at 85. No other weapons were recovered from petitioner. Id. at 58-60.

[15] This Court has rephrased petitioner's claims for ease of disposition.

[16] Petitioner claims this alone proves Mr. Diamondstein's ineffectiveness, citing Commonwealth v Lennox, 428 A 2d 228, 230 (Pa.Super 1981) to say that Mr Diamondstein should have been familiar with Draxinger, as all defense attorneys need to be aware of current law. 1925(b) Statement 5/19/17 at 2. Even if a case from thirty years ago is considered "current," the issue in Lennox was that counsel had failed to tailor a claim to the issues relevant and meritorious in his client's case, specifically a claim based on Pa R Crim.P 1100 which was likely to provide his client with relief. Lennox, 428 A 2d at 230. Instead counsel appealed in vague, "boilerplate language," thus Lennox is distinguishable and does not provide the support that petitioner claims. Id at 231.

5

Mr. Diamondstein testified that he did not raise the involuntary manslaughter issue on appeal for three reasons: to avoid the "kitchen sink" type of appeal that is disfavored by judges, because the case law indicated such a claim would have failed, and to focus on stronger claims. N.T. 3/20/17 at 9-11. He then concisely conveyed his thinking: "I didn't think it was a meritorious argument to suggest that a gun battle on the streets of Philadelphia was an involuntary manslaughter." N.T. 3/20/17 at 15 In appellate counsel's professional opinion, arguing on appeal that the evidence in the record supported a charge of involuntary manslaughter would have been futile Id. at 15-19.

Simple appellate strategy requires that counsel should put forth the best issues on appeal as courts do not look favorably on appeals that are filled with frivolous claims. Commonwealth v. Bracey, 795 A.2d 935, 950 (Pa. 2001) citing Jones v. Barnes, 463 U.S. 745, 748 (1983) Counsel's strategy is presumed effective if it has a reasonable basis to advance the client's interests. Commonwealth v. Miller, 819 A 2d 505, 517 (Pa. 2002). The appeal was pursued by Mr. Diamondstein on only two grounds, sufficiency of the evidence and court error in denying counsel's request for a charge of voluntary manslaughter N.T 3/20/17 at 8. Mr. Diamondstein wanted the narrowest attack possible, to focus on claims he thought could succeed. Id. As he had cases telling him that, under the circumstances, an appeal challenging the Court's denial of an involuntary manslaughter charge would lack merit, he did not pursue that claim in his tailored appeal. Id.

Narrowing the appeal to the strongest issues is a valid strategy, and is reasonable grounds for not adding a weak claim that risks diluting a stronger one. As Superior Court specifically noted, and Mr. Diamondstein recognized, the basis of a charge of involuntary manslaughter would not have been based on petitioners' own testimony, and would in fact have been contrary to petitioner's testimony at trial Commonwealth v. Satchell, No. 2005 EDA 2015 at *3, slip. op. (Pa.Super. Nov. 10, 2016); N.T. 3/20/17 at 8. At trial, petitioner had maintained he had not fired his gun Mr. Diamondstein was aware that a charge of involuntary manslaughter required at least an

6

acknowledgement that petitioner had fired, simply recklessly or with gross negligence rather than maliciously, which would be required for the charge of third degree murder. See Commonwealth v. Wright, 865 A.2d 894 (Pa Super. 2004) (requiring petitioner to admit firing gun to give such a charge).

The issue of a petitioner's testimony leaving him without a proper basis to secure an instruction on involuntary manslaughter was central to two cases upon which Mr. Diamondstein had relied: Commonwealth v Wright, 865 A.2d at 894, and Commonwealth v Smith, 513 A.2d 1371, 1375 (Pa. 1986). Both of these cases hold that when the evidence supporting a charge of involuntary manslaughter contradicts petitioner's own testimony, giving such an instruction is improper. Wright, 865 A.2d at 896 Smith, which the Supreme Court decided one year after Draxinger, additionally held that when an instruction on involuntary manslaughter "would have had no legitimate relation to the evidence presented at trial," and when the evidence overwhelmingly indicates intent, there is no need to provide such an instruction. 513 A.2d at 1378 While the Supreme Court did not reference Draxinger in Smith, it did make clear that "any evidence" is not enough to support a charge for involuntary manslaughter, there must be enough supporting evidence to make such an instruction "reasonable." Id. Smith was robbing the pharmacy where the victim worked, was seen with the gun threatening to shoot the victim, and his gun matched the murder weapon. Id. at 1373 After the store had been robbed, and the valuables taken from the occupants of the pharmacy, the killing shot was fired. Id. Our Supreme Court found it unreasonable under the circumstances to believe that the shooting was reckless rather than malicious. Id.

In Draxinger, a husband (defendant) and wife were intoxicated and argued for two hours. Draxinger, 498 A.2d at 964. The police were called but, by the time they arrived, the defendant had a gunshot wound in his arm, and the wife was deceased. Id The defendant was the only witness,

7

the only accounts of what happened were by him, and his recollections differed as time went by. Id. at 964-65. Draxinger holds, *inter alia*: "If any version of the evidence in a homicide trial, from whatever source, supports a verdict of involuntary manslaughter, then the offense has been made an issue in the case, and a charge on involuntary manslaughter must be given if requested." Draxinger, 498 A.2d at 965. Draxinger cites a number of cases to hold that the involuntary manslaughter instruction should be given whenever "any evidence"[17] supports it, including Commonwealth v Williams, 415 A.2d 403 (Pa. 1980). However, Williams states:

> Since these cases were handed down, trial judges have lacked a standard approved by a majority of the full court defining the circumstances under which a defendant's request for an involuntary manslaughter charge should be granted. To clarify this situation, we now hold that in a murder prosecution, an involuntary manslaughter charge shall be given only when requested, **and where the offense has been made an issue in the case and trial evidence reasonably would support such a verdict.** The rule is firmly grounded in logic and policy, for to instruct a jury on possible verdicts that are unsupported by any evidence can serve only to pervert justice. Not only may the jury be confused by what appears to be irrelevant instructions, and thereby possibly reach a mistaken verdict, but a conviction for the lesser offense may occur out of discriminatory favor for the defendant or out of animosity for the victim, or the jury might substitute its own visceral reaction for the classification established by the legislature

Williams, 415 A.2d at 404 (emphasis added). It is noteworthy that, despite indicating when such an instruction should be given, the Supreme Court did not hold such an instruction was warranted in Williams. The facts there indicated that Williams had beaten a blind man to death with a lead pipe as he was robbing him. Id. Our Supreme Court held "it would be ludicrous to suggest that appellant recklessly or negligently struck twelve blows with an iron pipe to the blind victim's head." Id. To warrant an instruction on involuntary manslaughter, and make it "an issue in the case," petitioners need to provide evidence that reasonably supports such an instruction

---

[17] Other cases allowing involuntary manslaughter instructions based on "any evidence" from "whatever source" either predate the cases discussed *supra*, see Commonwealth v Polimeni, 378 A 2d 1189, 1192 (Pa 1977) ("[if] there is present from whatever source evidence which would permit the fact-finder to return a verdict of involuntary manslaughter, a defendant is entitled, upon request, to a charge on the elements of that offense"), or deal with cases of self-defense, see Commonwealth v Charleston, 94 A 3d 1012, 1039 (Pa Super 2014) (involuntary manslaughter instructions are proper "if that fatal wound is inflicted during the course of a defensive struggle for a firearm")

The evidence Superior Court believed could be a basis for an involuntary manslaughter instruction in this case was the testimony of "Derrick Williams, a close acquaintance of Satchell, who testified that he saw Satchell, with two other men, firing at another group of men through a crowded street. As such, there was evidence in the record that Satchell fired his gun in a reckless or grossly negligent manner." Commonwealth v. Satchell, 2005 EDA 2015, 2016 WL 6649241, at *3 (Pa. Super. Ct. Nov. 10, 2016).[18]

The requirement from Williams that the evidence *reasonably* needs to support the charge of involuntary manslaughter is still the controlling law,[19] not the "any evidence" language from Draxinger. Commonwealth v. McCloskey, 10 years after the Draxinger decision, cites Williams to say "a charge on involuntary manslaughter shall be given only where the trial evidence 'reasonably would support such a verdict,' [meaning] just that: a verdict." 656 A 2d 1369, 1378 (Pa.Super. 1995). The evidence must indicate not just the possibility of a verdict of involuntary manslaughter, but that a reasonable jury would render such a verdict on the evidence presented. As petitioner's direct appeal challenged the sufficiency of the evidence to prove the malicious intent needed for third degree murder, and Superior Court there had affirmed that the evidence was sufficient,[20] Mr.

---

[18] In Commonwealth v Scales, 648 A 2d 1205, 1208 (Pa Super. 1994), Superior Court addressed a threat to the general public rather than to a particular victim There, the defendant, driving his car through a crowd of pedestrians, was found to have the requisite malice and intent for third degree murder, and, therefore, an instruction on involuntary manslaughter was found not to be supported by the evidence, despite petitioner's request. Superior Court analogized that it was as if defendant "had pointed and fired a gun down the crowded street with people in the line of fire " Id. As pointing and firing a gun into a crowded street is exactly what the jury found petitioner did here, it is clear that a claim that his actions were reckless, not malicious, would have failed There is ample case law indicating that pursuing the issue that it was trial court error to reject the request for an involuntary manslaughter charge would have failed

[19] This principle from Williams has been cited by Superior Court up to the present See Commonwealth v Hess, 915 EDA 2016, 2017 WL 817125, at *4 (Pa Super Mar 1, 2017) (stabbing an unarmed man several times in the back does not support a charge of involuntary manslaughter)

[20] See Dissenting Opinion of Justice Stevens, in Commonwealth v Satchell, No. 2005 EDA 2015 at *5, slip op. (Pa Super Nov. 10, 2016) (clarifying that Superior Court already found the evidence sufficient for third degree murder)

9

Diamondstein's inference that an instruction for involuntary manslaughter would have been rejected was correct.[21]

Draxinger's facts are unusual, and not at all similar to the facts in this case. The husband's testimony in Draxinger could have reasonably supported a number of verdicts based on how credible the jury found the defendant. In Smith, the Supreme Court found the facts clearly did not support a charge of involuntary manslaughter: shooting someone after a robbery is completed is not reckless, it is malicious. Williams, which both Draxinger and Smith cite, had even clearer facts. no reasonable jury could find beating a blind man to death was anything but malicious. In the present case, intentionally shooting multiple times through a crowded street was malicious. Petitioner was well aware the area he was shooting into was full of people. Evidence that, despite what he testified to, petitioner did fire the gun "with two other men . through a crowded street" was not enough on its own for an instruction on involuntary manslaughter, given the ample guidance from Supreme Court and Superior Court case law. There needed to be some evidence of a lesser *mens rea* that petitioner's actions were negligent or reckless, not malicious. Instead, the evidence showed that petitioner and his two companions fired a total of 16 shots while innocent bystanders were put at risk.[22] The Commonwealth's witnesses, and the very actions of petitioner and his companions, provided the malice, yet petitioner claimed innocence. None of the evidence indicated his firing of the gun was a mistake, or an accident. Even if petitioner had testified that he did fire, but had been reckless, he could not have prevailed under the circumstances of this case. Petitioner provided

---

[21] Mr Diamondstein testified that, due to the circumstances of the case, even if he had been aware of Draxinger his strategy would not have changed. N T 3/20/17 at 14.

[22] See Commonwealth v. Ramtahal, 33 A 3d 602, 607-08 (Pa 2011), Commonwealth v Overby, 836 A.2d 20, 22 (Pa 2003) (noting that number of shots fired can constitute circumstantial evidence of both specific intent and malice)

nothing to dispute what Superior Court had earlier found: petitioner's conduct was malicious, and the evidence was sufficient to support a conviction for third degree murder.[23]

For the foregoing reasons, appellate counsel had a reasonable basis not to advocate in favor of the involuntary manslaughter instruction, and therefore, the dismissal of petitioner's PCRA petition should be affirmed.[24]

BY THE COURT·

_M. Teresa Sarmina_
M. TERESA SARMINA , J.

---

[23] "Absent some evidence showing that victim's death was an accident caused by defendant's extreme carelessness, defendant was not entitled to instruction on involuntary manslaughter as lesser included offense of murder; defendant needed evidence that would tend to show that he acted recklessly or with gross negligence in causing victim's death." Commonwealth v Solis, 687 A 2d 1139, 1140 (Pa Super 1996) citing 18 Pa C S A § 2504(a) Petitioner had beaten his grandfather, and confessed to the murder giving his motive as "just want[ing] to take his guns and bullets and kill some one [sic] " Id. The evidence indicated that petitioner had acted with malice, not recklessness or gross negligence

[24] And, for all the same reasons, petitioner was not prejudiced by appellate counsel's failure, as an appeal citing Draxinger still would have failed, providing petitioner with no relief