J-S16016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANISHKA JAILEEN OTERO-VELEZ :
:
Appellant : No. 1279 MDA 2021

Appeal from the Judgment of Sentence Entered September 10, 2021,
in the Court of Common Pleas of Berks County,
Criminal Division at No(s): CP-06-CR-0004032-2019.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 20, 2022**

Danishka Jaileen Otero-Velez appeals from the judgment sentence imposed after a jury convicted her of first-degree murder and related offenses. Upon review, we affirm.

In its opinion, the trial court detailed the evidence in this case. We summarize the facts relevant to this appeal as follows. Otero-Velez was in a relationship with Ranciel Natera, the victim. At some time, Natera also had a relationship with another woman. Afterwards, Otero-Velez and Natera learned that the other woman was pregnant. A paternity test revealed that Natera was the father.

On the evening of November 5, 2018, Otero-Velez and Natera were discussing outside their apartment the fact that Natera had a baby with

_____

[*] Retired Senior Judge assigned to the Superior Court.

another woman. Otero-Velez was very unhappy about it. The conversation became very heated; they had been arguing about the paternity of the baby for weeks. Otero-Velez pulled out a gun, pointed it at Natera, and shot him in the chest. She then put the gun to Natera's head and shot him again. The shots were approximately two to three seconds apart.

Afterwards, Otero-Velez went to the apartment of her neighbors, Jason Cruz and Velmarie Velez-Negron.[1] Otero-Velez asked Cruz for help, for him to take the gun, but he refused. She then asked for help to move Natera's body. Cruz refused, but Velez-Negron agreed. The two women went outside, and Otero-Velez moved Natera's body.

When the police arrived at the scene, the two women went back inside the apartment. Once there, Otero-Velez pointed the gun at Cruz and demanded that he not say anything. She told Cruz and Velez-Negron not to tell the police she was Natera's girlfriend and to call her by a different name. Because they were afraid Otero-Velez might shoot Cruz or someone else, they complied with her demands. Otero-Velez then took the gun apart and hid part of it in her pants.

When the police came to the apartment, Otero-Velez told them her name was Carmen and that she was visiting a friend there. Otero-Velez' mom and sister came to the apartment, and Otero-Velez gave her sister part of the gun.

_____

[1] Cruz observed her argument with Natera earlier; Velez-Negron witnessed her shoot Natera.

While the police were investigating the scene, Cruz called Odaly Portes, one of the property owners, and told him there was an emergency at the apartment building. Portes arrived shortly thereafter with a business associate, Manny Burgos.

Otero-Velez walked over to them. Portes and Burgos offered their condolences to her, but she replied "F--- your condolences. I did it. I killed him. He went off and had a baby, you know, with this chick." Otero-Velez said that she previously told Natera that if the results showed he was the father, she would kill him. She also said that he lied about it and began to explain when Portes stopped her and asked who witnessed the shooting. She said Cruz and Velez-Negron and that she "could smoke [Cruz]" and "could send some of [her] people." Otero-Velez then told Portes she needed money so she could get out of town. Fearful, Portes gave her $100. Otero-Velez said that the police would know that she shot Natera because the gun was registered to her. She told Portes he should tell Cruz not to say anything, then left the scene.

During their investigation that night, the police found multiple bags in Otero-Velez' vehicle, including a laundry basket, travel bags, and trash bags. They also found two purses; each had a live cartridge in it. When the police searched Natera's apartment, they found no woman's belongings.

Subsequently, the police learned that Otero-Velez was Natera's girlfriend. They tried to locate her at various addresses but were unsuccessful.

In fact, Otero-Velez had fled to Florida. On December 4, 2018, the police arrested her.

On October 8, 2019, about a year after the shooting, a man who was fishing at a state park in Schuylkill County caught Otero-Velez' gun. He turned it over the park ranger who contacted police.

Natera's autopsy indicated that his death was caused by the shot to his chest which was fired from about three feet away. The autopsy also indicated that the gunshot wound to Natera's head was the result of the gun being placed directly against his head when it was fired.

On November 15, 2019, Otero-Velez was charged with first-degree murder, third degree murder, two counts of aggravated assault, three counts of intimidation of a witness, and three counts of terroristic threats.

On September 8, 2021, a jury convicted Otero-Velez of all charges except one count of intimidation of a witness. The trial court sentenced her to life in prison for the first-degree murder conviction; sentences for the other convictions were imposed concurrently. Otero-Velez filed a post-sentence motion, which the court denied.

Otero-Velez filed this timely appeal. Otero-Velez and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Otero-Velez raises a single issue:

1. Whether the Commonwealth failed to present sufficient evidence to support the conviction on the charge of [m]urder of the [f]irst degree as the Commonwealth failed to prove that [Otero-Velez] acted intentionally and with premeditation to kill

when she fired a gun during an argument with her boyfriend about a paternity test result?

Otero-Velez's Brief at 5.

Otero-Velez challenges the sufficiency of the evidence to convict her of first-degree murder. In reviewing a sufficiency of the evidence claim, this Court:

> must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). However, "the inferences must flow from facts and circumstances proven in the record and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." *Commonwealth v. Scott,* 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id.* "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond,* 83 A.3d 119, 126 (Pa. 2013).

Specifically, Otero-Velez claims that the evidence in this case was insufficient to prove beyond a reasonable doubt that she shot and killed Natera intentionally and with premeditation. Although there was evidence that she

was upset and fired a gun more than once, Otero Velez maintains there was no evidence of a premeditated, intentional killing. Instead, Otero-Velez maintains that she was emotional and angry over the situation. She claims her actions were "visceral as opposed to intellectual, which establishes a lack of premeditation necessary to sustain a conviction for first degree murder." Otero-Velez' Brief at 10,13.

Murder in the first degree is an intentional killing. 18 Pa.C.S.A. § 2502(a). "To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." **Commonwealth v. Kennedy**, 959 A.2d 916, 921 (Pa. 2008). "The element that distinguishes first-degree murder from all other degrees of murder is the intent to kill, *i.e.*, the presence of a willful, deliberate, and premeditated killing." **Commonwealth v. Ragan**, 743 A.2d 390, 400 (Pa. 1999); **see also** 18 Pa.C.S.A. § 2502(d). "Specific intent may be proven where the defendant knowingly applies deadly force to the person of another." **Commonwealth v. Sherwood**, 982 A.2d 483, 493 (Pa. 2009). Likewise, "circumstantial evidence[, by which the Commonwealth may prove specific intent,] may consist of the accused's use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Cox**, 728 A.2d 923, 929 (Pa. 1999); **Commonwealth v. Bryant**, 67 A.3d 716, 721 (Pa. 2013). The requisite period of reflection to establish premeditation for specific intent may

be as brief as "a fraction of a second." ***Commonwealth v. Rivera***, 983 A.2d 1211, 1220 (Pa. 2009).

Here, the evidence showed that Otero-Velez shot Natera in vital parts of his body. First, she shot Natera in the chest at close range, and then again, directly in his head. The chest and head are considered "vital parts" of the human body. ***Commonwealth v. Overby***, 836 A.2d 20, 22 (Pa. 2003). Additionally, the fact that Otero-Velez shot Natera more than once and that she deliberately put the gun to his head indicates that she intended to kill him. ***See id.***

Further, there is evidence of Otero-Velez' premeditation before the shooting took place. On several occasions prior to the murder, Otero-Velez expressed her anger with Natera for having a child with another woman. Otero-Velez admitted to Portes and Burgos that she killed Natera because of this. Otero-Velez confessed to Burgos that she previously threatened Natera that she would kill him if the paternity test results indicated he was the father. When they learned that Natera was the father, Otero-Velez carried her threat out and killed Natera.

Lastly, upon searching Otero-Velez' car, the police found numerous bags filled with clothes and various personal items. In Natera's apartment, which he shared with Otero-Velez, there was nothing that indicated a female had been living there. From these facts, the jury could infer that she planned to kill him and then escape afterwards.

Viewing the testimony and evidence presented in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth presented sufficient evidence to establish that Otero-Velez acted with premeditation and intentionally killed Natera. Her claim to the contrary fails; her conviction for first-degree murder stands.

Judgment of sentence affirmed

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2022