COMMONWEALTH of Pennsylvania,
Appellee,

v.

Miguel GARCIA, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 6, 2003.
Filed March 11, 2004.
Reargument Denied May 13, 2004.

Mitchell S. Strutin, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: DEL SOLE, P.J., KLEIN and CAVANAUGH, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is an appeal from the judgment of sentence imposed following Appellant's convictions, at a jury trial, of murder in the second degree, robbery and criminal conspiracy. He raises eight issues for our review: (1) whether the evidence was sufficient to support his convictions; (2) whether the trial court improperly denied his motion to suppress; (3) whether the trial court improperly denied his motion for severance; (4) whether the trial court improperly redacted his statement to police; (5) whether the trial court improperly charged the jury on the issue of flight; (6) whether the trial court improperly charged the jury on Appellant's right not to testify; (7) whether trial counsel was ineffective for failing to request a jury charge on the definition of "in furtherance" as used in the second-degree murder charge; and (8) whether trial counsel was ineffective for failing to interview and present certain

witnesses. Appellant's sixth issue raises a question of first impression: what is the proper method of jury instruction in a joint trial where the defendants have opposing requests concerning the "no adverse inference" instruction, and both are arguably entitled by law to have their request fulfilled?

¶ 2 The relevant facts are as follows. Appellant, his co-defendant Antonio Lambert [1] and Anthony Cheatham were in Appellant's car all afternoon on the date in question. Appellant and Cheatham smoked marijuana. Lambert told Appellant he wanted to get high and he directed Appellant to drive to an area where they purchased some Xanax pills, which they subsequently ingested. They stopped at a gas station and got gas. Upon leaving the gas station, Lambert told Appellant to pull over. Both Appellant and Lambert exited the car and attempted to steal the purse of a woman pushing a shopping cart. When the woman resisted, Lambert shot her, fatally wounding her. Both men returned to the car. Lambert, still holding the gun, told Appellant to drive away. Cheatham insisted on being let out of the car and he was. Appellant and Lambert remained together the rest of the evening. Early the next morning, still in Appellant's car, they were pulled over for a traffic violation. Appellant drove away before the police officer exited his car and a pursuit ensued. Appellant's car crashed; the occupants exited and fled on foot. Appellant, Lambert, and a third companion were apprehended; Appellant discarded the murder weapon during the foot chase.

¶ 3 Appellant and Antonio Lambert were jointly tried. Neither defendant testified at trial.

¶ 4 Appellant first argues the evidence was insufficient to support his convictions where the Commonwealth failed to prove beyond a reasonable doubt that Appellant entered into an agreement with Lambert to rob and/or shoot the victim. We disagree.

¶ 5 Our standard of review is as follows:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. ... When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751 (2000) (citations omitted).

¶ 6 The Commonwealth is not required to produce direct evidence of an actual agreement between the defendants to rob and/or kill the victim. Proof of such agreement may be made through circumstantial evidence. *Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309, 315 (2001). This Court has explained:

... direct proof of such an agreement is rarely available, nor is it necessary. Thus, "proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities".... An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

---

1. Antonio Lambert has also filed an appeal wherein he is named Terry Brown, a/k/a Antonio Lambert. We refer to him as Antonio Lambert.

These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Commonwealth v. Grekis,* 411 Pa.Super. 494, 601 A.2d 1275, 1283 (1992) (citations omitted).

■ ¶ 7 Viewing the circumstantial evidence in the light most favorable to the Commonwealth, as we must, we find sufficient evidence that Appellant and Lambert entered into an agreement to commit the crime. Appellant stopped the car on Lambert's order; they both exited the car; both participated in the robbery; Appellant drove the "getaway" car with Lambert in it for an extended time following the shooting; Appellant possessed and attempted to dispose of the murder weapon. These circumstances are sufficient to prove an agreement; Appellant is not entitled to relief on this issue.

¶ 8 Appellant next argues the trial court should have granted his motion to suppress his statement to police where that statement was given in contravention of his constitutional rights. Appellant bases this argument on the facts that he was not given the opportunity to consult with an interested adult at the time his *Miranda*[2] rights were given to him and that his mother, with whom he did consult after being advised of his rights, never had those rights explained to her.

■■ ¶ 9 On review of a defendant's appeal of the suppression court's ruling we consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 572 (1997). If there is support in the record, we are bound by the facts as found by the suppression court.

*Id.* However, we are not bound by the legal conclusions of the suppression court and must reverse if those conclusions are in error or the law is misapplied. *Commonwealth v. Albert,* 767 A.2d 549 (Pa.Super.2001).

■ ¶ 10 The relevant test for assessing whether a juvenile's rights were properly waived was established as follows:

The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

*Commonwealth v. · Williams,* 504 Pa. 511, 475 A.2d 1283, 1288 (1984).

■ ¶ 11 The facts, as found by the suppression court and supported by the record, are that Appellant attempted to give statements concerning the crime before he was even questioned about it. He was given appropriate *Miranda* warnings and permitted to call his mother, with whom he spoke before giving an official statement. His mother gave consent for the officer to speak with Appellant. Appellant was 17½ years old at the time. He did not appear to be under the influence of drugs or alcohol, and was coherent. No threats or promises were made; no coercion was exerted upon him in order to obtain the statement. His mother arrived

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

at the police station while Appellant was giving his statement; she sat next to him; Appellant and his mother reviewed the statement, made some corrections and both signed it.

¶ 12 Viewing the totality of these circumstances, we find no error in the suppression court's finding Appellant's waiver of his *Miranda* rights was voluntary; his due process rights were preserved; and the trial court properly denied the suppression motion.

¶ 13 Appellant's third argument is that the trial court improperly denied his pretrial motion for severance where, as a result of his joint trial: (1) he was denied the opportunity to cross-examine Officer Tracey Mahoney; (2) he was prohibited from providing an explanation for his and Lambert's flight; and (3) he was prejudiced by a jury instruction Lambert requested.

> The decision whether to grant a motion for severance is within the sound discretion of the trial court and will not be overturned absent a manifest abuse of discretion. The defendant bears the burden of proving that he was prejudiced by the decision not to sever, and he must show real potential for prejudice rather than mere speculation. The probability of antagonistic defenses is a factor that trial courts should consider in deciding whether to grant severance, but the claim must be more than bare antagonism. However, when defendants have conflicting versions of what took place, the truth may be more easily determined if all are tried together. Where conspiracy is charged, joint trials are advisable.

*Commonwealth v. Rivera*, 565 Pa. 289, 773 A.2d 131, 137 (2001) (citations omitted).

¶ 14 Appellant claims the conditions of the joint trial denied him the opportunity to defend himself in part because the Commonwealth chose not to call Officer Mahoney, to whom Appellant had spoken at the time of his apprehension. Appellant claims his counsel's cross-examination of Officer Mahoney concerning statements Appellant made about Lambert's culpability and Appellant's fear of Lambert would have "reflected adversely on Lambert." Appellant's Brief at 27. Appellant's brief argument is unpersuasive. He does not address why he was prohibited from calling Officer Mahoney, how his hearsay statements to Officer Mahoney may have come into evidence, and/or how he was prejudiced by the absence of this evidence. Even if we accept Appellant's argument, there is no showing that the verdict against Appellant would have been different if he had been able to admit evidence that Lambert robbed and shot the victim. Lambert was convicted of murder in the first degree, robbery, criminal conspiracy and possession of an instrument of crime on that factual predicate. The admission of additional evidence against Lambert, without accompanying competent exculpatory evidence concerning Appellant, would have had no effect on Appellant's verdict.

¶ 15 Appellant next argues, without elaboration or legal support, that the redaction of an out-of-court statement he provided to police resulted in his loss of opportunity to provide an explanation for his and Lambert's flight. Because Appellant was jointly tried with Lambert, reference to Lambert's parole status was removed from Appellant's statement as read to the jury. The original statement, concerning the defendants' flight from police at the car crash, read "[Lambert] said I'm on parole, I'm not trying to get locked up, man," but was redacted to say "one of the guys said I'm not trying to get locked up, man." N.T., 6/5/02 at 55, 83. We find, as

redacted, the statement still provided an explanation for the flight. We will not find the trial court abused its discretion in failing to grant a motion to sever on this basis.

¶ 16 Finally, we turn to Appellant's third basis for finding error in denying the motion to sever: the "no adverse inference" jury instruction Lambert requested. Although it presents an interesting question concerning severance, the substance of which is discussed below, Appellant did not raise it as a basis for his motion to sever. Therefore, it is waived. Pa.R.A.P. 302(a).

¶ 17 Next, Appellant argues he was prejudiced by the trial court's redaction of his statement to remove Lambert's parole status, thus depriving him of an explanation for his flight. As discussed above, the redacted statement still provided Appellant the opportunity to explain his flight from the crash as an effort to help his cohort evade apprehension.

¶ 18 Appellant further argues the trial court erred in its instruction to the jury on the issue of flight. When evaluating the propriety of a trial court's jury charge, it is axiomatic that the charge should be read as a whole. *Commonwealth v. Overby*, 836 A.2d 20, 24 (Pa. 2003). Further, we are mindful that the trial court has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately. *Id.*

¶ 19 Appellant requested an instruction indicating "that another occupant [or] other occupants of the car may have had a motive to flee." Appellant's Brief at 30; N.T., 6/7/02, at 136–140. The trial court's instruction was as follows:

Ladies and gentlemen, there was evidence which tended to show that [Appellant] fled from police by driving away approximately 16 seconds after his Chevrolet Monte Carlo was stopped by Lieutenant Daniel MacDonald on Hunting Park Avenue and then by fleeing on foot when his vehicle came to a halt after hitting a pile of trash. There was evidence which tended to show that Antonio Lambert attempted to flee from the police when the car driven by [Appellant] came to a halt and Mr. Lambert slipped on the icy ground and was taken into custody within 15 or 20 feet of the Monte Carlo. As to each defendant, the credibility, weight, and effect of this evidence is for you to decide.

Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees or attempts to flee, such conduct is a circumstance tending to prove that the person is conscious of guilt. Such conduct does not necessarily show consciousness of guilt in every case. **A person may flee or attempt to flee for some other motive and they do so even though innocent.** Whether the evidence of flight or attempted flight in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and **especially upon motives which may have prompted any flight or attempted flight.** You may not find either defendant guilty solely on the basis of evidence of flight or attempted flight.

N.T., 6/10/02, at 35–36 (emphasis added).

¶ 20 Upon reading the charge as a whole, we find no abuse of discretion. The trial court explained that a motive other than consciousness of guilt may prompt flight. Appellant requested the trial court explain other occupants of the car may have had their own motives, besides guilt, to flee. However, we find first, this explanation is encapsulated in the trial court's charge to the jury; further, the motives of

74

the other occupants are not necessarily probative of Appellant's motive. We decline to find the trial court abused its discretion in giving the flight instruction it did.

¶ 21 Appellant next argues the trial court erred by giving the jury a "no adverse inference" instruction when Appellant requested none be given. This instruction conveys to the jury the principle that no adverse inference can be drawn from a defendant's choice to exercise his right, under both the United States and Pennsylvania constitutions, not to testify at trial.[3] The "no adverse inference" instruction **must** be given "absent an express on the record colloquy by the defendant waiving the charge." *Commonwealth v. Thompson*, 543 Pa. 634, 674 A.2d 217, 222 (1996).

¶ 22 In this case, Appellant was colloquied, and he expressed his desire that no such instruction be given. However, his co-defendant Lambert was also colloquied, and he requested the instruction. The trial court chose to give the instruction.

¶ 23 Appellant argues he should have benefited from case law which holds a defendant's request not to give the "no adverse inference" instruction must be honored. In *Commonwealth v. Edwards*, 535 Pa. 575, 637 A.2d 259, 261 (1993), the Pennsylvania Supreme Court announced the following rule: "it will be *per se* reversible error if a judge instructs the jury concerning a defendant's right not to testify when the defendant has requested that no such instruction be given."

¶ 24 Unlike *Edwards*, which involved a single defendant, in this case we are confronted by the situation raised, but not resolved, in Justice [now Chief Justice] Cappy's Concurring and Dissenting Opinion in *Edwards:*

> . . . what effect will today's ruling have on multiple defendant situations where one defendant wishes to waive the no adverse inference charge, and another defendant maintains his constitutional right to have the charge given? Will this court then be facing time consuming appeals of a right to severance on this basis?

*Id.* n. 1.

¶ 25 The trial court could honor only one defendant's request. We find no error in its ultimate choice. We hold that where multiple defendants are properly joined for trial, if one requests his or her constitutional right not to testify be explained via a "no adverse inference" instruction, the trial court must give such an instruction, despite a co-defendant's objection.

¶ 26 In part, the alternatives dictate our decision. To refuse to give the requested instruction would violate the constitutional rights of the defendant who requested it, resulting in an unfair trial. This option is untenable. The only remaining option would be to sever the trials at the point at which this conflict arises, after the defendants have made their strategic decisions concerning whether to testify and whether to request the "no adverse inference" instruction. To require a trial court to declare a mistrial and order separate trials for the defendants at that necessarily late point in the proceedings would

---

**3.** In this case, the instruction was read as follows:

> Ladies and gentlemen, it is entirely up to each defendant in every criminal trial whether or not to testify. Each defendant has an absolute right founded on the Constitution to remain silent. You must not draw any inference of guilt or any other inference adverse to a defendant from the fact that he did not testify.

N.T., 6/10/02, at 23–24.

be a great waste of judicial resources. Accordingly, we find Lambert's constitutional right to have the instruction read trumped Appellant's strategic request that it not be read.

¶ 27 In considering the possible detriment to Appellant by the inclusion of the instruction, we note, with interest, the United States Supreme Court's words on the same subject: "It would be strange indeed to conclude that this cautionary instruction violates the very constitutional provision it is intended to protect." *Lakeside v. Oregon,* 435 U.S. 333, 339, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978).

¶ 28 Finally, Appellant presents two claims of ineffective assistance of counsel. Our Supreme Court has made clear that ineffectiveness claims raised on direct appeal should await collateral review. *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). We note Appellant argues *Grant*'s inapplicability, but we find his argument contrary to the current state of the law. Accordingly, we dismiss Appellant's final two claims without prejudice to raise them in a collateral proceeding.

¶ 29 Judgment of sentence affirmed.