**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON J. DOMINICK | : | |
| | : | |
| Appellant | : | No. 1010 MDA 2019 |

Appeal from the PCRA Order Entered June 7, 2019
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002273-2013

BEFORE: PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED AUGUST 27, 2020**

Jason Dominick appeals from the order entered in the Lackawanna County Court of Common Pleas, which dismissed his timely second amended petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. In his petition, Dominick illuminates what he claims to be six discrete instances of ineffective assistance of counsel. As we find none of the situations outlined in Dominick's brief to surmount the high bar necessary to constitute ineffective assistance of counsel, we affirm.

In summary, Dominick was charged with various offenses, including first- and third-degree murder and conspiracy to commit both of those crimes, after the dead body of Frank Bonacci was discovered in the passenger's seat of Bonacci's vehicle at the bottom of a steep ravine. Bonacci died of a single

---

[*] Former Justice specially assigned to the Superior Court.

close-contact gunshot wound to the back of his head.

Evidence at trial suggested that Dominick harbored some level of animosity toward Bonacci, stemming from, among other things, Dominick's former girlfriend becoming romantically attached to Bonacci. The last time Bonacci had been seen prior to his death was when he left a party at the residence of Neil Pal. Pal would eventually be charged as Dominick's co-conspirator. Bonacci left the party and eventually started his vehicle, accompanied by both Dominick and Pal.

Bonacci's vehicle was then seen via the University of Scranton's video surveillance system, which established his Jeep Liberty crossing the train tracks in the vicinity of where he would ultimately die. A short time after the video captured the vehicle being driven, Pal called one of his friends to provide a ride for him and Dominick. The two were ultimately picked up alongside Interstate 81 South after emerging from a wooded area adjacent to that road.

A jury convicted Dominick of third-degree murder and conspiracy to commit third-degree murder, stemming from the same incident: the shooting death of Frank Bonacci. At sentencing, Dominick was sentenced to a minimum term of incarceration of forty years to a maximum term of eighty years.

After he was sentenced, Dominick filed post-sentence motions, which the court denied. Dominick then appealed to our Court, where we affirmed his judgments of sentence. Thereafter, our Supreme Court denied his petition for allowance of appeal.

Instantly, Dominick filed a timely *pro se* PCRA petition. Correspondingly, Dominick was appointed counsel, and two amended petitions were subsequently filed. Dominick was granted a hearing on his petition, which primarily featured testimony from a bloodstain expert. Ultimately, the PCRA court denied all of the claims contained in his PCRA petition. Afterwards, Dominick timely appealed the PCRA court's decision and required Dominick to file a concise statement of issues he intended to present on appeal. Dominick timely complied, and the PCRA court issued an order indicating that it would rely on its initial memorandum and order dismissing Dominick's PCRA petition.

On appeal, Dominick claims that there were six occurrences where the PCRA court should have found Dominick to have been prejudicially impacted by ineffective assistance of counsel:

1) Was it ineffective assistance of counsel where trial counsel failed to object, seek an exception, and/or otherwise suggest an alternative instruction be provided in response to the jury's questions during deliberations because the answer provided was inconsistent and/or conflicting with the previous instructions, contrary to the law, and/or otherwise misleading?

2) Was it ineffective assistance of counsel where trial counsel failed to object to the jury instruction and the verdict slip on the basis that they were not consistent with the law, confusing, and/or misleading?

3) Was it ineffective assistance of counsel where trial counsel failed to investigate, obtain, and/or present a bloodstain pattern expert on behalf of the defense?

4) Was it ineffective assistance of counsel where trial counsel failed to conduct a reasonable investigation of the bloodstain pattern evidence and failed to request additional testing of evidence as requested or make a reasonable decision that an

investigation and/or further testing were unnecessary?

5) Was it ineffective assistance of counsel where trial counsel failed to admit defense expert's curriculum vitae into evidence, thereby prohibiting its review by the jury during deliberations and failed to object to a redacted version of the defense expert's report being provided to the jury?

6) Was it ineffective assistance of counsel where, when faced with the prosecution's closing argument, which stated or implied that trial counsel was assisting in creating a false and deceptive narrative to present to the jury, trial counsel failed to object, request a mistrial, or seek a curative instruction?

*See* Appellant's Brief, at 3.

Our standard of review for an order denying PCRA relief is well-settled:

Upon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (internal citations omitted).

Asserting a PCRA claim of ineffective assistance of counsel requires a petitioner to demonstrate, via a preponderance of the evidence, that counsel's deficient action or actions "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(2)(ii). However, counsel is presumed to have rendered

- 4 -

effective assistance. *See Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012). Therefore, in order to obtain relief, a petitioner must demonstrate prejudice as recognized by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Commonwealth v. Hannibal*, 156 A.3d 197, 206 (Pa. 2016) (identifying that Pennsylvania courts employ "the performance and prejudice standard set forth in *Strickland*").

*Strickland* requires our Court to ascertain whether: (1) the petitioner's underlying claim has arguable merit; (2) counsel's action or inaction was unreasonable; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance to such an extent that there is a reasonable probability that the result of the proceeding would have been different excepting counsel's affirmative error or omission. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). The petitioner has the burden of demonstrating the legitimacy of all three prongs. *See Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995).

If a petitioner does not satisfy any one prong of the ineffectiveness test, it is fatal to his or her claim. *See Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018). Additionally, we are not bound to any particular sequential analysis of the three ineffectiveness prongs; if, for whatever reason, a petitioner's fails under any prong, we may immediately discuss that element to dismiss the claim in its entirety. *See Sepulveda*, 55 A.3d at 1117-18.

As to the first prong of the test, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." **Commonwealth v. Postie**, 200 A.3d 1015, 1023 (Pa. Super. 2018) (citation omitted). Whether those asserted facts rise to the level of arguable merit is a legal determination. **See id**. (citation omitted). We emphasize, too, that counsel cannot be deemed ineffective for failing to raise a clearly meritless claim. **See Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015).

On the second prong, our Supreme Court has clarified that:

> we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will conclude that counsel's chosen strategy lacked a reasonable basis only if [a]ppellant proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

**Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (internal citations and quotation marks omitted).

If counsel's particular course has some reasonable basis that was designed to effectuate his client's interest, that action is generally considered to be constitutionally effective. **See Commonwealth v. Lesko**, 15 A.3d 345, 380 (Pa. 2011). Moreover, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Colavita**, 993 A.2d 874, 887 (Pa. 2010) (citation omitted).

The third, prejudice-based prong requires the petitioner to establish that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. ***See Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012). Accordingly, "a reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010). An inquiry into whether there has been prejudice utilizes a totality of the evidence approach. ***See Postie***, 200 A.3d at 1023.

While he identifies that his "first two arguments are related and argued together," Appellant's Brief, at 12 n. 5, by addressing his first two, yet distinct, ineffective assistance arguments in tandem with one another, Dominick arguably violates Pa.R.A.P. 2119(a). Nevertheless, Dominick has provided enough discussion on each issue for our full resolution of his contentions, and we, too, have combined them for ease of disposition.

Dominick asserts trial counsel was ineffective for failing to object to an instruction given in response to a question from the jury during deliberations. The jury asked if Dominick could be found guilty of conspiracy if he was found not guilty of first-degree murder or third-degree murder. ***See*** N.T., 5/9/14, at 17. In response, the trial court answered that Dominick could not be found guilty of conspiracy under those circumstances. ***See id***., at 19. Dominick avers that this answer from the trial court took from the jury its "sole prerogative to decide on which counts to convict[.]" ***Commonwealth v. Kearns***, 907

A.2d 649, 659 n. 10 (Pa. Super. 2006).

"[A]n error in the jury instructions warrants a new trial only where such error has been clearly prejudicial to the defendant." *Commonwealth v. May*, 656 A.2d 1335, 1343 (Pa. 1995). While the court, in its instructions, may use its own forms of expression to explain tough legal concepts, *see Commonwealth v. Saranchak*, 675 A.2d 268, 275 (Pa. 1996), the law must still be presented "clearly, adequately, and accurately." *Commonwealth v. Garcia*, 847 A.2d 67, 73 (Pa. Super. 2004).

Supplemental instructions in response to a jury's request rest "within the sound discretion of the trial judge." *Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa. Super. 2001). If "a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion." *Id*.

Dominick's allegation is that when the trial court indicated a murder conviction was a necessary component to the conspiracy conviction, it contradicted the court's initial jury instruction, which indicated that it was completely within the province of the jury to decide how it would answer the verdict slip's questions. At trial, the court explained, correctly, that the crime of conspiracy requires an agreement and an overt act in furtherance of that agreement. *See* N.T., 5/8/14, at 21-24. However, a complicating facet of this conspiracy charge was that the sole overt act alleged was Dominick killing

Bonacci. **See id**., at 22. Therefore, Dominick claims the trial court effectively predetermined the jury's resolution of the case by foreclosing on the possibility that conspiracy could follow a not guilty third-degree murder verdict.

The jury slip indicates at question two that regardless of the jury's adjudication of guilt as to that question - i.e., whether Dominick was guilty of third-degree murder - the jury was then to go to question four to consider whether Dominick was guilty of conspiracy to commit third-degree murder. **See** Verdict Slip, PCRA Hearing, 10/16/17, Ex. J. Therefore, conceivably, the jury could have, based on the italicized instructions written on the verdict slip alone, convicted Dominick of conspiracy to commit third-degree murder without having found him guilty of third-degree murder even though the conspiracy's singular overt act alleged was, effectively, the third-degree murder. Dominick does not challenge that the sole overt act alleged for both charged conspiracy offenses was the murder of Bonacci.

While Dominick claims that the trial court's amelioration of the verdict slip's illogical outcome "told the jury how it had to answer the particular questions," Appellant's Brief, at 17, we conclude that despite this assertion, Dominick has failed to establish that the outcome of the proceedings would have been different but for counsel's failure to object to the instruction. Dominick states that because the jury was instructed that it could not find Dominick guilty of conspiracy to commit third-degree murder if it found him not guilty of third-degree murder, "it is conceivable the jury would convict

[Dominick] of third-degree murder even if it did not find sufficient evidence."
*Id*., at 18.

Dominick contorts the trial court's explanation by providing a situation that is disparate from the sequential order of the verdict slip: "if the jury determined there was evidence sufficient to convict him on conspiracy to commit third-degree murder, in order to convict him of [the] same it had to also convict him of third-degree murder even if it found the evidence insufficient to convict for third-degree murder." *Id*. As will be explained more fully below, given the progression of the charges contained on the verdict slip, the jury was not to consider conspiracy to commit third-degree murder until it reached a decision on the third-degree murder charge itself. Although the court's instruction prevented the finding of conspiracy absent an underlying murder conviction, if anything, it was to Dominick's benefit, as it prevented the jury's confusion and possibility of a false adjudication of guilt. Moreover, Dominick has cited nothing for the proposition that, as distinct from the verdict slip, all charges had to be considered concomitantly.

In addition, trial counsel clearly had a reasonable basis for not objecting to the answer provided by the trial court to the jury. As testified to at the PCRA hearing, trial counsel believed that he had no reason to object because the jury's question seemed to indicate that it was leaning towards a finding of not guilty for all charges. *See* PCRA Hearing, N.T., 10/16/17, 20, 24-25. If he were to have objected, however, it could have jeopardized his client by

potentially exposing Dominick to a legally erroneous conspiracy conviction. Stated differently, had the curative instruction not been provided, the jury could have found Dominick guilty of conspiracy absent the requisite overt act necessary for such a conviction. As such, counsel was not ineffective for failing to object to the trial court's supplemental instructions.

In a similar vein, we find no error in the PCRA court's conclusion that trial counsel was not ineffective in failing to object to the verdict slip used at trial. "[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." *Commonwealth v. Charleston*, 94 A.3d 1012, 1021 (Pa. Super. 2014) (citation omitted) (alteration in original). Additionally, "it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Id*. (citation omitted).

Dominick is correct in his assessment that the trial court's answer to the jury's question created a differing trajectory and possible outcome from that envisaged by the verdict slip. However, the trial court staved off any potential problems associated with the slip by issuing clarifying instructions. Dominick does not argue that the trial court committed an error of law by issuing the clarification. Accordingly, to the extent that the verdict slip and initial jury instructions, as written, were misleading, any deficiency was cured through

the court's instruction that conspiracy to commit third-degree murder could not follow a not guilty third-degree murder verdict.

Prior to reading the verdict slip, the trial court emphasized to the jury that "[t]he number of questions you answer and how you answer those questions will be entirely up to you and that is for you and you alone to decide." N.T., 5/8/14, at 10. In addition, the court emphasized that the jury was to "understand that the number of questions that [it] will answer on the verdict slip will depend on how [it] answer[s] earlier questions." *Id*. The trial court also stated to the jury: "You should not misconstrue the fact that I am charging on a particular question which appears on the verdict slip as any indication on my part as to how you should answer the questions on the verdict slip." *Id*.

Therefore, at no point did the trial court ever mandate or suggest a particular outcome. Furthermore, Dominick is *not* challenging that the sequential nature of the verdict slip was somehow inappropriate or legally incorrect. The court did, though, offer what was essentially an amendment to the corresponding written directions that detailed the procedure for filling out a verdict slip. Such instruction is "not subject to interpretations that could potentially prejudice a defendant." ***Commonwealth v. Johnson***, 815 A.2d 563, 584 (Pa. 2002) (indicating that, unlike instructions containing "an articulation of points of law" or legal definitions, a trial court merely explaining to the jury how to fill out a verdict slip, i.e., its instructions, is not construed

as prejudicial).

Given a trial court's broad discretion in phrasing its charge, Dominick has not pointed to any evidence that the trial court's oral amendment of its instructions was somehow legally erroneous, inaccurate, or in conflict with our prior case law. We fail to see how the trial court's amended instruction is materially distinct from the originally-included italicized procedural instructions. The trial court satisfactorily reviewed for the jury all of the elements of each crime Dominick was charged with, *see* N.T., 5/8/14, at 3-27, and thereafter explained the procedure for filling out the verdict. *See id*., at 28-30. While jury slips "should be accurate, so as not to mislead," *Ali*, 10 A.3d at 312 (Pa. 2010), the trial court cured any possibility of procedural misinformation that the jury may have had, and again, Dominick does not challenge that the sole overt act alleged by the Commonwealth was the murder, itself. Accordingly, we are unable to conclude that there is a reasonable possibility the outcome would have been different had trial counsel objected to the verdict slip.

Dominick next identifies that trial counsel was ineffective for not investigating, obtaining, or presenting a bloodstain pattern expert.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the *Strickland* test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a

- 13 -

fair trial.

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012). To establish ***Strickland*** prejudice, a petitioner must demonstrate how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. ***See id***., at 1109. "Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense." ***Id***. Moreover, "[a] failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Id***.

Dominick contends "that a bloodstain expert would have been beneficial to the defense." Appellant's Brief, at 26. Dominick bolsters this assertion via testimony adduced from a bloodstain pattern expert at one of his PCRA hearings. There, the expert stated that the fatal shot "could have been fired from the driver's seat or the rear passenger seat." PCRA Hearing, N.T., 11/1/18, at 27. The expert then went on to opine that neither position of the shooter was more likely than the other. ***See id***. In effect, Dominick suggests that his PCRA bloodstain expert could have controverted the Commonwealth's theory of the case, adding a series of "could haves" to the respective actions of Dominick, Pal, and Bonacci prior to Bonacci's death. ***See*** Appellant's Brief, at 27-28. Furthermore, Dominick focuses on his expert's opinion that the Commonwealth's bloodstain expert's conclusions were "non-scientific" and lacked the requisite empirical support. PCRA Hearing, N.T., 11/1/18, at 28-

- 14 -

29.

Dominick also illuminates trial counsel's testimony as to why he did not call a bloodstain expert. In his own words, trial counsel was suspicious of the Commonwealth's failure to present the testimony of Paul Kish. *See* PCRA Hearing, N.T., 10/16/17, at 103-04, 106 (explaining that the Commonwealth reached out to Kish, a bloodstain expert, author, and trainer of the Commonwealth's bloodstain expert, but that Kish never responded to the Commonwealth). Accordingly, to Dominick, "if counsel reasonably believed [that potential expert's] failure to write a report meant he did not agree with the prosecution's theory regarding the bloodstain evidence, it made obtaining and consulting a blood stain expert more necessary." Appellant's Brief, at 29-30.

In response, trial counsel indicated he was afraid of the possibility that if he were to have obtained an expert that supported the Commonwealth's theory of the case, he would have been required to turn over that evidence. *See* PCRA Hearing, N.T., 10/16/17, at 104-05. Trial counsel, instead, decided that the best course of action was to utilize the reports of forensic pathologists and firearms experts to bolster his case as well as thoroughly cross-examine the opinion of the bloodstain expert utilized by the Commonwealth. *See id*., at 105-06, 108-09.

Dominick contends trial counsel's decision to cross-examine the Commonwealth's bloodstain expert was made without investigation, was

unreasonable, and did not bring to light helpful information. While trial counsel utilized a relevant treatise, written by the apparent mentor of the bloodstain expert, to cross-examine that individual, Dominick takes issue with counsel's "limited understanding of its content and [that he] disregarded numerous, relevant chapters which would have shown [the bloodstain expert's] analysis was improperly performed and his opinions were nonscientific." Appellant's Brief, at 36.

Dominick highlights that trial counsel never questioned the expert's methodology and that various elements of the Commonwealth's expert's testimony, such as his phraseology, were inaccurate or inconsistent with other experts in that specific field. Dominick then proceeds to illuminate problems with the Commonwealth's expert and suggests relevant questions that were not asked of that expert during cross-examination. Ultimately, Dominick suggests that the Commonwealth's bloodstain expert did not use proper methodology that would have been necessary to achieve accurate results nor did that expert describe having conducted any sort of replicative experiments, which Dominick asserts were required for scientific validity.

Preliminarily, we emphasize that "[t]rial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to critically evaluate expert testimony [that] was presented by

the prosecution." **Chmiel**, 30 A.3d at 1143 (Pa. 2011) (citation omitted) (brackets in original). However, if cross-examination is the tactic employed, the critical question is whether trial counsel effectively conducted cross-examination. **See id**.

At trial, counsel cross-examined several of the police detectives, including the bloodstain pattern expert, as to why Kish was never called as a witness or offered a report. **See** N.T., 5/5/14, at 31-33, 113-14, 221-22. In addition, trial counsel cross-examined the bloodstain expert to either develop potentially damaging testimony or cast doubt on his veracity. These cross-examination topics included: 1) the expert's admission that he did not take into account blood patterns that alter appearance over time due to various factors; 2) bringing awareness to the fact that there was a nine-day delay in finding Bonacci's body; 3) various environmental factors that could have had an effect on conclusions drawn from the bloodstains; 4) the inertia of Bonacci's body and the vehicle itself as both descended into the embankment where Bonacci would ultimately be found; and 5) the effects of the coroner's powder that could have contaminated the vehicle. **See id**., 5/5/14, at 210-215, 220-21, 226, 5/8/14, at 209, 225. At the subsequent PCRA hearing, when asked for an explanation into his trial tactics, counsel also highlighted the inherently risky nature of finding or attempting to find his own expert on the issue: if that expert ended up refuting the defense's theory of the case, he would be doing harm to his client given the necessity to disclose the same to the

Commonwealth. *See* PCRA Hearing, N.T., 10/16/17, at 104-05.

The biggest issue with Dominick's supposition that an expert was necessary is the fact that the expert testimony he now provides does not reach any ultimate conclusion as to the identity of the shooter. In fact, Dominick's PCRA expert expressly disavowed any ability to testify with any certainty as to whether Dominick was the shooter. *See* PCRA Hearing, N.T., 11/1/18, at 102. Moreover, as he concedes, the two opinions rendered by trial counsel's ballistics expert and PCRA counsel's bloodstain expert "are virtually identical," Appellant's Brief, at 33, with both highlighting the ambiguity associated with where the shot was fired from. However, trial counsel's ballistics expert, unlike PCRA counsel's bloodstain expert, went one step further by stating that it was more likely to have been the driver, who would have been Pal, that fired the shot.

We are unable to ascertain how Dominick has been prejudiced by not being able to call a bloodstain expert witness. The expert presented during the PCRA hearing was unable to directly repudiate, with any kind of certainty, that Dominick was the shooter. Using Dominick's own words that his ballistics expert at trial and current bloodstain expert's opinions were essentially identical, even excepting the fact that the PCRA expert does not reach any ultimate conclusion, it strains credulity to think that another expert's opinion at trial would not have been duplicative and unnecessary. Likewise, trial counsel's cross-examination of the Commonwealth's bloodstain expert

presented the same issues to the jury. As a result, we cannot say that he was ineffective in failing to call a bloodstain expert. Accordingly, Dominick has failed to demonstrate ineffective assistance of counsel on this point.

Largely overlapping his expert-based argument, Dominick next believes trial counsel was ineffective when he did not request nor have additional testing done of the bloodstain pattern evidence. Dominick contends that trial counsel's research into the issue of bloodstain evidence was superficial, and in spite of needing to do so, counsel did not view such evidence with any kind of importance. Dominick illuminates a portion of trial counsel's testimony where he stated that sometimes, things are overlooked by mistake, and other times, things are overlooked for a particular reason, primarily due to risking the defense's theory of the case. **See** PCRA Hearing, N.T., 10/16/17, at 133. Also, Dominick points to trial counsel's admission that he was not worried about where the shot ultimately ended up or that "the bloodletting and all the evidence that was in the car" was important. **Id**., at 131.

"In general, counsel has an obligation to conduct reasonable investigations or reach reasonable decisions that make a particular investigation unnecessary." **Commonwealth v. Hughes**, 865 A.2d 761, 813 (Pa. 2004). "Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of

the investigation." ***Commonwealth v. Timchak***, 69 A.3d 765, 770 (Pa. Super. 2013) (citation omitted). In addition to our reasonableness inquiry, we are also to give a heavy deference to counsel's judgments. ***See Commonwealth v. Williams***, 141 A.3d 440, 463 (Pa. 2016).

While trial counsel should have conducted at least a reasonable independent inquiry into the saliency of the Commonwealth's evidence instead of dismissing it as "garbage," PCRA Hearing, N.T., 10/16/17, at 108, just as with the asserted need for an expert, we fail to see how the outcome would have been different had a more rigorous investigation been undertaken. First, it is unclear how trial counsel's investigation would have materially differed from the findings offered by the bloodstain expert at the PCRA hearing. Other than speculation or paralleling his earlier arguments, Dominick is not suggesting that there is an expert available who would unequivocally opine that Dominick was not the shooter. If anything, having had an expert who would testify identically to the testimony taken at the PCRA hearing could have weakened Dominick's position, as it would have cut against the ballistics expert's conclusion as to where the bullet was fired from. ***See*** N.T., 5/7/14, at 141-42; PCRA Hearing, N.T., 11/1/18, at 80-82, 89, 102.  Second, counsel's chosen course of action was to attack the credibility of the Commonwealth's expert, a decision we must grant great deference to, which he did by way of using an expert treatise on the subject as well as casting doubt on the legitimacy of the expert's conclusions. Third, Dominick had the benefit of two

other experts, albeit in fields distinct from bloodstains, that provided invaluable evidence in Dominick's favor. We conclude that Dominick has failed to establish any prejudice from counsel's decision to not further investigate the bloodstain evidence.

In a third, yet related, argument, Dominick states that trial counsel should have conducted testing on the shattered glass and gun powder residue, as requested by his ballistics expert. That expert sought to compare different glass fragments that were recovered by Dominick's private investigator and conduct further gunshot residue tests of the passenger seat cover found in Bonacci's vehicle. While trial counsel claims that a request for glass testing was made while in the trial court's chambers, *see* PCRA Hearing, N.T., 10/16/17, at 122-23, there is no record of that having happened.

In either event, Dominick concludes by portraying trial counsel's actions as having been entirely untimely or wholly unreasonable given his deficient investigation. Stated differently, Dominick contends that had additional testing taken place, it would have added more beneficial evidence to the defense's theory that two shots were fired and it was more likely than not that the driver shot the victim.

In response to the ballistic expert's suggestion that more testing was needed, the Commonwealth asserted that as to the seat cover testing, not only would it have required a continuance of the trial, but the company that was to administer the testing "neglected to advise the parties of the nature

and purpose of the test, what the test would ultimately demonstrate, how long they would need to conduct the test, or how it could affect any of their conclusions." Appellee's Brief, at 38. Likewise, the glass fragments that the ballistics expert suggested should be tested were found eight months after Bonacci's body was discovered and were located some ways away from the crime scene adjacent to or on a nearby pathway.

While indigent defendants are afforded the same right to access the same resources as non-indigent defendants in criminal proceedings, "[t]here must be some showing as to the relevancy of the proposed expert testimony before such a request will be granted." **Commonwealth v. Tighe**, 184 A.3d 560, 580 (Pa. Super. 2018) (citation omitted). Utilizing public funds "to hire experts in the defense against criminal charges is a decision vested in the sound discretion of the court and a denial thereof will not be reversed absent an abuse of discretion." **Id**. (citation omitted).

Regarding the testing of glass fragments, it would not have been an abuse of discretion for the trial court to conclude that such a request either was or would have been irrelevant given the fragments' proximity to the crime scene as well as date those fragments were found. As the trial court noted, the fragments were found by Dominick's private investigator on a frequently traversed access road months after the murder took place. **See** Trial Court Opinion, 6/7/19, at 64-65. Ultimately, the glass fragments were deemed to be of "dubious relevance and questionable origin." **Id**., at 66. Even now,

Dominick does not attempt to provide any further explanation or proof that could possibly tie the existence of those glass fragments to Bonacci's vehicle. His failure to demonstrate relevancy beyond making bald assertions leads us to conclude that Dominick has failed to establish arguable merit. Even if trial counsel would have requested, on the record, glass fragment testing, we cannot conclude it would have been granted.

On the issue of gunshot residue, it was not ineffective assistance of counsel for trial counsel to not seek additional testing of the seat cover. After testing had already been performed on the seat cover, the ballistics expert concluded by saying that "[t]o come to further more specific conclusions, we need to do more testing." N.T., 5/7/14, at 161. In context, this desire for more testing came on the heels of the testing company's finding and expert's interpretation, suggesting that the gun was fired from the front seat of the vehicle. However, there was no further explanation provided to the court or the Commonwealth or even trial counsel, himself, as to how this newly suggested testing would be performed and how it would differ from the testing that had already been conducted. Even accepting the unclear nature of what further, seemingly duplicative, testing would have uncovered, trial counsel would have needed to seek an additional continuance of trial. Since the trial date had already been altered due to previous continuances, the trial court indicates that counsel would not "have succeeded in securing another continuance for additional testing to be completed." *Id*. We find no error in

- 23 -

the PCRA court's conclusion that Dominick failed to establish this claim had arguable merit. As a result, he failed to establish that counsel was ineffective for failing to timely request further residue testing of the seat cover.

Dominick next claims that trial counsel was ineffective when he failed to admit his ballistics expert's fifty-five page curriculum vitae into evidence and also failed to object to a redacted version of that expert's report being provided to the jury. At trial, the Commonwealth stipulated to the expert's qualifications. *See* N.T., 5/7/14, at 132-33, 5/8/14, at 67. However, because trial counsel never admitted the curriculum vitae into evidence, when the jury requested that document, the prosecution objected, and resultantly, the jury was not able to see it. *See id*., 5/8/14, at 67. After reflecting on this inaction, trial counsel admitted to having made a mistake by not seeking the curriculum vitae's admission. *See* PCRA Hearing, N.T., 10/16/17, at 52-53, 64-65.

Generally, "the jury may take with it [during deliberations] such exhibits as the trial judge deems proper." Pa.R.Crim.P. 646(A). However, certain items are excluded, such as a transcript of any trial testimony. *See, e.g*., Pa.R.Crim.P. 646(C)(1). "[W]hether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005) (citation omitted). However, the plain language of Rule 646 requires this material provided to the jury to be previously entered as an exhibit.

We once again conclude Dominick has failed to demonstrate prejudice. In his testimony, the ballistics expert went through all of the areas highlighted in his curriculum vitae: (1) his extensive firearms training; (2) his extensive employment as a professional firearms trainer, training police, police instructors, federal agents, SWAT teams, military personnel, and security personnel; (3) his position as a board member of the International Association of Law Enforcement Firearms Instructors; (4) his experiences evaluating shootings; (5) his previous experience as an expert witness in over 250 cases; (6) his background knowledge, through writing large portions of police training curriculum and his own experiences, regarding the rare likelihood that anyone would transfer a gun to his non-dominant hand to fire it (part of Dominick's theory of the case, casting doubt on his likelihood as the shooter); and (7) his educational experience, graduating from Yale University and Harvard Law School. *See* N.T., 5/7/14, at 142-44, 170-71. Given the broad and comprehensive overview of the expert's qualifications that were adduced through testimony, Dominick has failed to demonstrate prejudice. In his brief, there is no specific mention of any crucial pieces of information that the jury did not have the benefit of hearing absent having physically reviewed the expert's curriculum vitae or how having that information would have altered the course of the trial. Accordingly, we can find no error in the PCRA court's determination that Dominick has failed to demonstrate ineffective assistance of counsel.

As a result, we also cannot conclude that the PCRA court erred in ruling that it was also not ineffective assistance of counsel for trial counsel having failed to object to the ballistic expert's redacted report. The trial court indicated that it would provide the jury with a redacted report that exclusively encompassed topics that were testified to at trial. **See** N.T., 5/8/14, at 67.

Trial counsel did argue before the court that the expert's report should include information beyond that of the redacted copy. **See id**., at 74-75, 78. Moreover, the court expressed its concern for potential prejudice that could ensue if the jury would see that the report identified the expert as having been paid by taxpayers. **See id**., 5/7/14, at 128-29. However, as Dominick notes, "[t]he redacted report was never admitted into evidence nor is it part of the record." Appellant's Brief, at 54 n.29.

A trial court may redact expert reports provided to the jury if the jury did not hear that information at trial. **See Commonwealth v. Causey**, 833 A.2d 165, 178 (Pa. Super. 2003). In his report, the expert discussed his busy schedule, other cases he was contending with, and his request for additional funding. **See** N.T., 5/8/14, at 72-75. Those portions were redacted. Other redacted components included the expert's discussion on what further gunshot residue testing might demonstrate, as it was deemed to be speculative in nature. **See id**., at 76-77. Conversely, the trial court did not redact his analysis and findings to which he testified at trial. **See id**., at 75-81.

Dominick does not identify any specific line located in the expert report

that, by virtue of its omission, could be considered enough to have caused him prejudice and therefore altered the outcome of the trial. In fact, other than his bald conclusion that "the outcome could have been different," Appellant's Brief, at 55, Dominick fails to indicate how any of the redacted pieces of information materially prejudiced him. As a result, we can find no error in the PCRA court's conclusion that Dominick failed to establish that counsel was ineffective by failing to object to the redaction of the expert report.

Lastly, Dominick contends that the prosecution's closing argument was unconstitutionally suggestive, and as a result, counsel was ineffective for failing to object to it. Specifically, Dominick points to the Commonwealth having indicated to the jury that Dominick had to conjure up a story and find a way to navigate through a "minefield sea of lies and deceptions" in order to present his side of the case. N.T., 5/8/14, at 4. Dominick asserts that the Commonwealth impermissibly suggested that trial counsel had acted unethically and knowingly participated in presenting false evidence to the jury. *See* Appellant's Brief, at 57.

A prosecutor has "reasonable latitude" to argue a defendant's guilt. *See* ***Commonwealth v. Clancy***, 192 A.3d 44, 62 (Pa. 2018). Therefore, "the underlying issues and elements at trial dictate the bounds of permissible argument." *Id*. Accordingly, Pennsylvania courts must "evaluate both the substance of the challenged remark and its effect upon the jury." *Id*.

"Prosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair." **Chmiel**, 30 A.3d at 1146 (Pa. 2011). Any comment that is challenged must be considered in the context in which it was offered, not in isolation. **See id**.

The gravamen of Dominick's argument on this issue is that the prosecution's comments "indicated trial counsel was complicit or party to manufacturing [Dominick's] lies." Appellant's Brief, at 57. Dominick contends that the Commonwealth implicitly indicated that "counsel acted unethically" because counsel "not only allowed false testimony but played a role in conjuring it up." **Id**. Therefore, Dominick believes he "was prejudiced by the comments since [it] likely tarnished counsel's credibility in front of the jury." **Id**.

Dominick's characterization of the Commonwealth's closing stretched credulity. As quoted by Dominick in his brief, the part of the argument at issues is as follows:

> Make no mistake about it. If believed, his [Dominick's] words are devastating. If believed, his words demonstrate he, in fact is a killer and the person who killed Frank Bonacci. The only way it doesn't is if you believe the excuses, if you believe the context that's been *conjured up over the course of nine months of meeting twice a week with his lawyer, of understanding the angles to the case and then coming front each of you over the course of two days and finding a way to navigate a minefield sea of lies and deceptions* and that's a choice.

**Id**., *citing* N.T., 5/8/2014, at 4 (emphasis in Appellant's Brief).

We do not read the Commonwealth's closing statement as

unconstitutionally implicating trial counsel in some sort of scheme to promote lies. The only explicit reference to trial counsel in the challenged statement is where the Commonwealth indicated that Dominick met with his lawyer twice a week for nine months. There is no other insinuation, other than Dominick himself crafting the narrative that conflicted with the Commonwealth's theory of the case, that trial counsel was responsible for Dominick's alleged fabrication. In fact, when questioned, trial counsel did not believe that the prosecution had accused him of lying or of having committed any other nefarious or unethical act. *See* PCRA Hearing, N.T., 10/16/17, at 183. We cannot conclude that the PCRA court erred in concluding that this claim lacked any arguable merit. Accordingly, Dominick failed to establish that trial counsel was ineffective for failing to object to the Commonwealth's closing statement.

As none of the individual issues raised by Dominick constitute ineffective assistance of counsel, we affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2020

- 29 -