J-S38026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK WELLMAN | : | |
| | : | |
| Appellant | : | No. 2670 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000127-2020

BEFORE: STABILE, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED JANUARY 21, 2025**

Mark Wellman ("Wellman") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions for second-degree murder, robbery, conspiracy, and related crimes. Wellman's counsel, Attorney Michael I. McDermott ("Counsel"), seeks to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). Upon review, we deny Counsel's petition to withdraw and direct Counsel to file a merits brief.

_____

[*] Former Justice specially assigned to the Superior Court.

The trial court set forth a thorough factual history of the facts adduced at Wellman's jury trial, which we adopt herein.[1]

> On October 5, 2019, Police Officer Raymond Convery and his partner were on routine patrol in the area of 20th and Susquehanna Streets in the City and County of Philadelphia. A man not wearing any pants or shoes, later identified as Mr. Anthony White, flagged down the officers and reported that he had been robbed. Mr. White gave a description of the two men who robbed him and said he believed the two men to be brothers, although he did not know their names. The officers described Mr. White as being "frantic," "excited" and "amped up." Mr. White brought the two officers to his house at 2160 N 19th Street where he told them the robbery happened. When the police entered the house, the rear bedroom was kicked in and Mr. Curtis Hill was laying on the ground inside Renee Edwards' apartment. Officers checked for a pulse. Mr. Hill had no pulse.
>
> Mr. White testified … he was at the apartment of his friend, Renee Edwards[,] and her female friend on the morning of October 5, 2019. [Wellman] was also at the apartment. He and Ms. Edwards had an argument and [Wellman] left angry. About an hour later he returned and again began arguing with Ms. Edwards. [Wellman] removed a revolver from his waistband and began waving it around.
>
> Mr. White tried to leave the apartment. [Wellman] told him to "Sit down, old head." Mr. White complied, since Mr. White [sic] continued to wave the gun around. [Wellman] asked the people in the apartment, "Where's the money," as he pointed the gun at each of the people inside the apartment. [Wellman]'s brother, Dominique Wellman [("Dominique")], [was] with [Wellman]. [He] brandished what appeared to be a rifle inside a large trash bag. Mr. Wellman held the trash bag as if it contained a rifle and pointed it at the people in the apartment, while [Wellman] patted down the victims. Mr. White gave [Wellman] two watches, but hid a small amount of money. [Wellman] and the co-defendant [Dominique] took keys, wallets, and cell phones.

_____

[1] The trial court's opinion uses the spelling "Wellmon." For the sake of readability we have changed those instances without bracketing.

After that, [Wellman] went next door to Mr. Curtis Hill's room and knocked at the door, telling Mr. Hill to come to the room with them and sit down on the bed. [Wellman] pushed Mr. Hill onto the bed. Mr. Hill complied but was described by Mr. White as being "defiant" and refused to give the two brothers anything. One of the women told the Wellmans that Mr. Hill had a computer in his room.

[Wellman] and [Dominique] became aggravated that none of the victims had anything more valuable. Ms. Edwards offered to have her daughter come to the apartment with money, but that did not materialize. Mr. Hill tried to get up again and [Wellman] stated, "I'm sick of him." [Wellman], standing about 1-2 feet away, pointed the gun at Mr. Hill's head and pulled the trigger. Mr. Hill's body slumped to the floor. …

After [Wellman] shot and killed Mr. Hill, [he] told everyone to "get down on the floor." [Wellman] told Mr. White to take his pants off and put his head down. Mr. White complied. The two brothers took Mr. White's small bag and left the apartment, apparently headed to Ms. Edwards' daughter's house. Mr. White ran out after the two left and flagged down the police officers. Mr. White testified that two watches ..., his Moto phone, ... and his keys were taken in the robbery.

After a short time passed, police responded to another shooting in the area of 17th and Diamond. Based on information received from a Temple University security guard, police apprehended the Wellman brothers hiding in an alleyway ... not far from the incident at 20th and Susquehanna. The guard saw two men running into the alleyway, discarding clothes ... [and] a revolver. When Police Lieutenant Dana Bradley entered the alleyway, she saw [Wellman and Dominique] …. Both men were detained. Other police officers brought Mr. White to the area ... [where he] identified both brothers as the gunmen who robbed him and his friends and [who] shot Mr. Hill.

Recovered from Dominique [] was Mr. White's Moto phone and the ... watch belonging to Mr. White. Recovered from [Wellman] was the other watch belonging to Mr. White. Both watches were identified by Mr. White and returned to him. Also recovered from the apartment where Mr. Hill was killed, was a disposable glove. Police brought Ms. Renee Edwards to 17th and Diamond where [Wellman] stated to her in front of the police, "You're a rat. You're a snitch. I'm going to get you."

Trial Court Opinion, 2/6/2024, at 3-6 (citations omitted).

Additionally, police discovered a "backpack and a red and black plaid shirt over the fence" next to the Wellman brothers. Inside were two computers, a white t-shirt, a face mask, and a revolver. The black nylon jacket contained gunshot residue. DNA analysis linked Wellman to the plaid shirt, white t-shirt, backpack, and face mask. *Id.* at 7-9.

At trial, the Commonwealth called Dominique, who had provided a statement to the police and entered a guilty plea before his brother's trial. After Dominique claimed that he did not remember speaking to the police, the Commonwealth introduced a videotaped recording of his statement, wherein he claimed that "the girls" in the apartment set up the robbery and admitted that he and his brother decided to rob the victims for money and drugs. Dominique stated that Hill attempted to wrestle Wellman to the ground and the gun accidentally discharged during the struggle. *Id.* at 10.

Finally, Wellman testified in his defense. He admitted to going to Edwards' apartment but stated that he had remained outside. Wellman stated that he did visit Edwards' daughter, who lived in the area of 17th and Diamond Street, where he had an altercation with the daughter's boyfriend. Wellman indicated that this man fired shots, which prompted him to run and hide.

Ultimately, the jury convicted Wellman of four counts of robbery, three firearms offenses, conspiracy, and second-degree murder. The trial court imposed a mandatory sentence of life imprisonment without the possibility of

parole for the murder charge, and a consecutive sentence of five to ten years of incarceration for one of the robberies. No further penalty was imposed at all other counts. Wellman's trial counsel filed a post-sentence motion in arrest of judgment, which was denied by operation of law. Trial counsel filed a timely notice of appeal. Subsequently, the trial court appointed Counsel as Wellman's appellate counsel. Counsel complied with the order to file a Rule 1925(b) statement.

Counsel has now filed an *Anders* brief and petition to withdraw in this Court. "In order to withdraw from appellate representation pursuant to *Anders*, certain procedural and substantive requirements must be met." *Commonwealth v. Tejada*, 176 A.3d 355, 358-59 (Pa. Super. 2017). We do not review the merits of the underlying issues or permit counsel to withdraw without first assessing whether counsel has complied with the three technical requirements attending the withdrawal process. *Id.* at 359. First, counsel must "file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous." *Commonwealth v. Wrecks*, 931 A.2d 717, 720 (Pa. Super. 2007) (citing *Anders*, 386 U.S. at 744). Second, counsel must furnish a copy of the accompanying *Anders* brief to the defendant and advise him or her of the right to retain new counsel or proceed pro se. *Id.* Third, counsel must inform the defendant of the right to raise any additional points for this Court's consideration. *Id.*

Counsel has complied with these technical requirements. Counsel filed a petition to withdraw with this Court stating that after a conscientious review of the record he finds this appeal to be wholly frivolous. Petition to Withdraw, 5/17/2024. His **Anders** brief verifies that a copy of the brief was forwarded to Wellman. Counsel also informed Wellman of his right to immediately retain new counsel or proceed pro se and raise additional claims for our review.[2] Therefore, we conclude that Counsel has complied with the technical requirements.

We next review the substantive requirements governing the content of the **Anders** brief.

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Falcey**, 310 A.3d 313, 315 (Pa. Super. 2024) (quoting **Santiago,** 978 A.2d at 361).

---

[2] Initially, Counsel erroneously informed Wellman that this Court would issue an order directing Wellman to file his own brief or obtain counsel to do so. As a result of this misstatement of the law, this Court ordered Counsel to send an amended letter informing Wellman of his right to immediately retain new counsel or proceed pro se and raise additional points for our attention. Order, 5/21/2024. Counsel complied with our directive and filed a copy of the amended letter.

The **Anders** brief includes the required summary, refers to the portions of the record that arguably supports the claims, and sets forth the required conclusion of frivolity and the basis for that conclusion. We therefore proceed to our independent review to see if we agree with Counsel's assessment. He identifies the following four issues:

> 1. Was the evidence insufficient to sustain the verdict regarding the charges of 18 Sec. 2502 Murder in the 2nd degree; 18 Sec. 903 conspiracy-murder in the 2nd degree, 18 Sec. 6106A1 6106 Firearms not to be carried without a license, 18 sec. 6108 Carry Firearms Public in Philadelphia, 18 Sec. 907 Poss. Instrument of Crime with Intent; 18 Sec 5101 (F1) Robbery, 4 counts?
>
> 2. Was the verdict against the weight of the evidence regarding the charges of 18 Sec. 2502 Murder in the 2nd degree; 18 Sec. 903 conspiracy-murder in the 2nd degree, 18 Sec. 6106A1 6106 Firearms not to be carried without a license, 18 sec. 6108 Carry Firearms Public in Philadelphia, 18 Sec. 907 Poss. Instrument of Crime with Intent, 18 Sec 5101 Robbery (4 counts)?
>
> 3. Was the Consciousness of Guilt jury instruction was [sic] erroneously given?
>
> 4. Should the missing witness charge have been given to the jury regarding failure of [producing] Renee Edwards … as a witness in this matter?

**Anders** Brief at 4.

"This Court has stated that part and parcel of **Anders** is our Court's duty to review the record to insure no issues of arguable merit have been missed or misstated." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa. Super. 2018) (en banc) (quotation marks and citation omitted). "[W]e must give **Anders** a most generous reading and review 'the case' as presented in the entire record with consideration first of issues raised by counsel." **Id.**

### Sufficiency of the Evidence

- 7 -

The first claim concerns the sufficiency of the evidence supporting every crime for which Wellman was convicted. *Id.* at 15-16. Counsel's presentation of this claim in the Rule 1925(b) statement was substantively similar to the issue listed in his brief, as it too merely listed the crimes. The trial court concluded that this presentation was vague and waived all sufficiency issues on appeal. Trial Court Opinion, 2/6/2024, at 12. Alternatively, the trial court concluded that the evidence was sufficient to sustain each charge.

A proper sufficiency challenge "must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." ***Commonwealth v. Ellison***, 213 A.3d 312, 321 (Pa. Super. 2019) (citation omitted). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). Here, Wellman was convicted of eight crimes, each of which contains several elements. Instead of alerting the trial court to specific elements, the 1925(b) statement simply generically challenged every element of every crime. That is inadequate. ***See Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa. Super. 2015) (deeming sufficiency challenge waived where the "Rule 1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Nonetheless, insofar as the trial court chose to address the challenge and Counsel relied on the trial court's assessment as a reason not to file a merits brief, we find that the sufficiency claims were preserved for review. *See Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007) (concluding that a vague Rule 1925(b) concise statement does not preclude appellate review when "the [trial] court readily apprehended [the a]ppellant's claim and addressed it in substantial detail").

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citation omitted). Whether the evidence is sufficient to sustain the convictions presents a pure question of law, and our standard of review is de novo. *Commonwealth v. Akeley*, 320 A.3d 106, 110 (Pa. Super. 2024).

Robbery of Edwards, White, and an Unnamed Victim

Beginning with the convictions for robbery as to Renee Edwards, Anthony White, and the unknown woman, we agree that the evidence was sufficient to the degree any challenge would be frivolous. Here, the

Commonwealth was required to show that "in the course of committing a theft, [Wellman]: ... threaten[ed] another with or intentionally put[] him in fear of immediate serious bodily injury" as to those three victims. 18 Pa.C.S. § 3701(a)(1)(i-ii).

According to the testimony of White, Wellman and his brother entered the apartment and demanded money or other valuables from the individuals inside, with Wellman waving around a firearm. Their efforts were unsuccessful as to some of the victims, but this is irrelevant as an attempted theft is sufficient. **See Commonwealth v. Sanchez**, 36 A.3d 24, 41–42 (Pa. 2011). ("That circumstances made it such that appellant and his accomplices failed to obtain and remove money (or other valuables) is irrelevant because proof of an attempted theft is sufficient to establish the 'in the course of committing a theft' element of robbery."). Additionally, pointing a firearm at the victims is sufficient proof that the victims were placed in fear of immediate serious bodily injury. **See Commonwealth v. Brougher**, 978 A.2d 373, 378 (Pa. Super. 2009) (finding that "point[ing] an air-soft pistol that looked like a real firearm ... during the course of a robbery" satisfied this element). The jury was entitled to credit White's direct testimony as well as the significant circumstantial evidence supporting Wellman's guilt on both points. **See Sebolka**, 205 A.3d at 337 (stating that the "jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence") (citation omitted). We therefore agree that these

three robbery convictions are supported by sufficient evidence and that any challenge would be frivolous.

Firearms Violations

Next, we address the three convictions based on Wellman's possession of a firearm. To sustain a conviction for carrying a firearm without a license, the Commonwealth "must show that the defendant intentionally, knowingly, or recklessly carried a firearm in a vehicle or concealed on or about his person outside his home or place of business without a valid and lawfully issued license." **Commonwealth v. Mead**, ___ A.3d ___, 2024 WL 4646924, at *4 (Pa. Super. Nov. 1, 2024) (citing 18 Pa.C.S. § 6106(a)(1)). The Commonwealth need not prove operability "unless evidence has been introduced that the gun was inoperable." **Id.** at *5. Here, the firearm was used to shoot Hill and was therefore operable. **See Commonwealth v. Coleman**, 532 A.2d 477, 484 (Pa. Super. 1987) (operability inferentially established by eyewitnesses who heard gunshots, turned, and saw defendant holding a firearm with smoke surrounding his head). As to concealment, White testified that Wellman pulled the firearm from his waistband. **See Commonwealth v. Scott**, 436 A.2d 607, 608–09 (Pa. 1981) (testimony that witness observed defendant pull gun from waistband established concealment). Finally, the parties stipulated that Wellman did not have a license to carry a firearm. N.T., 3/20/2023, at 4.

Wellman was also convicted of violating 18 Pa.C.S. § 6108, which required proof that Wellman "was carrying a firearm either on the public streets or public property of Philadelphia and that he was neither licensed to do so nor exempt from the licensing requirement." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009). The firearm was recovered a short distance from where Wellman was apprehended, which was in the City of Philadelphia. The circumstantial evidence established that this was the same firearm used to kill White and therefore the Commonwealth established all elements of the crime.

Finally, the jury found Wellman guilty of possessing an instrument of crime. Relevantly, a person may not "possess[] a firearm or other weapon concealed upon his person with intent to employ it criminally." 18 Pa.C.S. § 907(b). The evidence clearly established that Wellman intended to employ the firearm criminally by using it to kill Hill. ***See Commonwealth v. Buford***, 101 A.3d 1182, 1189 (Pa. Super. 2014) ("[T]he jury could have reasonably concluded that the weapon used by [Buford] to shoot the decedent was a revolver-type firearm, which [Buford] was not licensed to carry, in violation of [sections] 907 and 6106.").

Crimes Against Hill

The remaining convictions are for robbery as to Hill, murder of the second degree for the death of Hill, and conspiracy to commit second-degree murder.

The proof supporting the robbery conviction is straightforward. The only difference between the other three convictions discussed supra and this one is that the Commonwealth was required to show that Wellman "inflict[ed] serious bodily injury" upon Hill during the robbery. *See* 18 Pa.C.S. § 3701(a)(1)(i). The gunshot wound causing his death unquestionably qualifies. *See Commonwealth v. Robertson*, 463 A.2d 1133, 1136 (Pa. Super. 1983) (upholding conviction under this subsection where Robertson shot and killed victim and then took items; "the evidence is more than sufficient to establish that [Robertson] intended to take property from the victim before the victim's death and did so by inflicting 'serious bodily injury upon' the victim"). Thus, the evidence was sufficient to support Wellman's robbery conviction as to Hill.

The robbery conviction formed the basis for the second-degree murder conviction. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(d). The evidence plainly sufficed to show that Wellman was guilty of robbery as a principal and that Wellman killed Hill during that robbery. The evidence is therefore sufficient to establish Wellman committed second-degree murder. *Commonwealth v. Rivera*, 238 A.3d 482, 500 (Pa. Super. 2020) ("The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually

intended to physically harm the victim."). Accordingly, we agree with Counsel that any challenge to these two convictions is frivolous.

The final charge is for conspiracy to commit second-degree homicide. We disagree with Counsel's assessment on this crime and therefore order Counsel to file a merits brief on this issue. Our reasoning follows.

The Commonwealth's closing argument focused on a conspiracy to commit robbery. "Conspiracy. I already talked about it. It's that plan between [Wellman] and his brother." N.T., 3/30/2023, at 98. "[T]hey were there for money and whatever they could get." *Id.* The Commonwealth asserted that their plan was "to commit a robbery." *Id.* Wellman, however, was then convicted of conspiracy to murder, not conspiracy to commit robbery, with the trial court grading the offense as a conspiracy to commit second-degree murder based upon the jury's finding.

In the trial court opinion, it opined that "[a]mple direct and circumstantial evidence of a conspiracy was introduced at trial. The record reflects not only that [Wellman] conspired to commit a robbery, but also that the plan contemplated [Wellman]'s use of deadly force in doing so because [he] brought a loaded gun to the robbery." Trial Court Opinion, 2/6/2024, at 20. The court opined that Wellman "participat[ed] in a conspiracy to commit robbery, that the conspiracy contemplated that [Wellman] be armed, and that [Wellman] shot and killed Hill (overt act) during that robbery." *Id.*

In general, a conspiratorial scheme is defined by what the parties hope to achieve. *See* 18 Pa.C.S. § 903(c) ("If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."). Additionally, as conspiracy is itself a substantive crime, "[a] defendant may be convicted of both conspiracy and the offense that was the object of the conspiracy." *Commonwealth v. Rios*, 684 A.2d 1025, 1030 (Pa. 1996). The criminal information alleged that the offense that was the object of the conspiracy was "murder/robbery." Criminal Information, 1/13/2020. The Commonwealth therefore alleged two separate conspiracies. *See Commonwealth v. King*, 234 A.3d 549, 568 (Pa. 2020) ("Within the language for conspiracy, the Commonwealth listed: 'Criminal objective: assault, murder.' Thus, in reality the Commonwealth presented the jury with two separate theories of conspiracy[.]").

Here, the trial court's opinion is correct with respect to a conspiracy to commit robbery. However, the conviction at issue is for a conspiracy to commit second-degree murder. That Wellman shot and killed Hill during the robbery would supply a basis for the jury to convict his brother, as a co-conspirator to the robbery, for second-degree murder. It would likewise form a basis for the jury to convict Wellman of second-degree murder if the evidence established that the parties conspired to commit a robbery and Dominique pulled the trigger as the principal actor. But the jury's finding that

the conspiracy was to commit second-degree murder presents conceptual difficulties, as conspiracy is a specific intent crime. *See Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) ("The Commonwealth must demonstrate the formation of an illicit agreement, the attendant specific shared intent to promote or facilitate the object offense, and an overt act."); *Commonwealth v. Morton*, 512 A.2d 1273, 1275 (Pa. Super. 1986) (noting that "a conviction for conspiracy requires a specific intent 'of promoting or facilitating' the commission of a crime). Therefore, the Commonwealth was required to show that the conspirators specifically intended for their criminal enterprise to culminate in a murder.

Further, this Court has observed the following regarding whether a conspiracy to commit second-degree murder is a cognizable offense:

> The Crimes Code does not expressly set forth that one can be found guilty of second-degree murder as a conspirator. Other jurisdictions have determined that one cannot conspire to commit felony murder. This Court has also repeatedly noted that one cannot attempt to commit felony murder because an attempt is a specific intent crime, as is conspiracy. We note, however, that our Supreme Court has concluded that one can conspire to commit third-degree murder, which does not require proof of a specific intent to kill.

*Commonwealth v. Mitchell*, 135 A.3d 1097, 1101 n.2 (Pa. Super. 2016) (citations omitted). This alone suggests that the issue is not frivolous.

Our decision in *Commonwealth v. Rivera*, 238 A.3d 482 (Pa. Super. 2020), offers additional support for our conclusion that a sufficiency challenge to this conviction is not frivolous. There, unlike this case, the defendant was

convicted of multiple conspiracies; specifically, conspiracy to commit second-degree murder, conspiracy to commit burglary, and a conspiracy to commit robbery. We held that pursuant to section 903(c) Rivera could only be sentenced on the conspiracy to commit robbery:

> [W]e conclude that the conduct of [Rivera] and his co-defendants did not result from three separate conspiracies. Instead, their conduct was the result of a "continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). The agreement among [Rivera] and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at gunpoint (robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), [Rivera] only could be found guilty of conspiracy to commit robbery, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." [**Commonwealth v.**] **Barnes**, 871 A.2d [812,] 821 [(Pa. Super. 2005)]. Accordingly, we vacate [Rivera]'s conspiracy to commit burglary and conspiracy to commit second-degree murder convictions. **Id.** at 821 n.6. However, because the trial court imposed concurrent sentences for these convictions, we have not upset the overall sentencing scheme and need not remand for resentencing.

**Id.** at 490.

We therefore conclude that "there are non-frivolous issues that counsel, intentionally or not, missed or misstated." **Yorgey**, 188 A.3d at 1197. This is not to say the issue will warrant relief; we solely conclude at this stage that the challenge is not frivolous. **See Commonwealth v. Blauser**, 166 A.3d 428, 434 (Pa. Super. 2017). ("While ultimately, appellant may not be entitled to any relief, we cannot say that the appeal is 'wholly frivolous,' i.e., without any basis in law or fact."). When addressing this claim Counsel should analyze

the precedents discussed. *Id.* (directing attorney to address a decision and statutory provision not discussed in the *Anders* brief).

## Weight of the Evidence

The second issue identified by Counsel is a challenge to the weight of the evidence supporting the verdict, noting that Wellman testified he was not one of the perpetrators. *Anders* Brief at 16. We agree that this claim is frivolous.

A weight-of-the-evidence claim is addressed to the discretion of the trial court. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). On appeal, we do not examine the underlying weight claim; we assess only whether the trial court abused its discretion in ruling on the claim. Our review is thus "distinct from the standard of review applied by the trial court[.]" *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citation omitted).

Here, the trial court's opinion explains that it rejected the weight claim since the jury's "decision to credit the Commonwealth's eyewitness testimony, forensic evidence, and testimony from the co-conspirator, [Wellman]'s brother" did not shock its conscience. Trial Court Opinion, 2/6/2024, at 26.

Given the ample (and indeed overwhelming) evidence of guilt, the trial court's explanation renders any challenge to the exercise of its discretion wholly frivolous. *See Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor).

## Jury Instruction: Wellman's Flight

The third issue raised in the *Anders* brief is whether the trial court erroneously instructed the jury that it could consider Wellman's flight as evidence of guilt. *Anders* Brief at 17. Relevantly, the trial court issued the following instruction:

> There was evidence that the defendant took off his shirt and jacket after leaving the house on 19th Street. The credibility and weight and [e]ffect of this evidence is for you to decide.
>
> Generally speaking, when a crime has been committed and a person thinks he or she is or may be accused of committing it, and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent.
>
> Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of the case and especially upon any motives that may have prompted the flight or concealment. You may not find the defendant guilty based solely on the evidence of flight or concealment.

N.T., 3/30/2023, at 116-17. Wellman preserved this claim by objecting after the instructions were issued. N.T., 3/30/2023, at 145; *see also* Pa.R.Crim.P.

647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

A trial court "has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately." ***Commonwealth v. Garcia***, 847 A.2d 67, 73 (Pa. Super. 2004).

> It is a well-settled rule of law that if a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.

***Commonwealth v. Harvey***, 526 A.2d 330, 334 (Pa. 1987). Whether the suspect has reason to know he is wanted "may be inferred from the circumstances attendant [to] his flight." ***Commonwealth v. Johnson***, 838 A.2d 663, 681 (Pa. 2003).

We agree that the claim is frivolous as there is no basis to hold that the trial court erred in issuing the instruction. ***See Commonwealth v. Ignatavich***, 482 A.2d 1044, 1048 (Pa. Super. 1984) (holding that the trial court did not err in issuing a consciousness of guilt instruction "drawn from the fact that [Ignatavich] had fled after stabbing the victim and had concealed himself in the woods for a day before surrendering to police"). Further, although Wellman testified in his defense and offered an alternative explanation for his flight and change of clothes—he claimed that he did so because he believed he had been shot, N.T., 3/30/2023, at 58—the trial court

properly instructed the jury that it could consider Wellman's explanation in tandem with the alternative inference. *See Ignatavich*, 482 A.2d at 1084 (explaining that Ignatavich's statement that he hid due to fear of retaliation by the victim's family "did not remove the propriety of an instruction regarding flight and concealment," and his "conduct ... together with [his] explanation therefor, were properly submitted to the jury" for their assessment). Accordingly, this claim is frivolous.

**Jury Instruction: Missing Witness**

The fourth and final issue presented in the *Anders* brief is whether the trial court erred in failing to issue a "missing witness" instruction based on Renee Edwards' absence from trial. *Anders* Brief at 17. We agree with the trial court that this claim was waived for appellate review. At the close of the second day of trial, the trial court briefly discussed what jury instructions would be issued. Wellman asked, "Do I get a missing witness for Ms. Edwards?" N.T., 3/29/2023, at 146. The trial court asked if Wellman had issued a subpoena to Edwards, to which he replied, "No, I didn't subpoena her. Couldn't find her." *Id.* at 147. The trial court expressed its initial view that the instruction would be inappropriate since the witness was unavailable to both parties but would reconsider if Wellman presented caselaw. *Id.* Unlike the prior claim, Wellman did not object at the close of jury instructions. The issue is therefore waived, and frivolous on that basis. *See Commonwealth*

*v. Kalichak*, 943 A.2d 285, 291 (Pa. Super. 2008) (holding that a waived claim is definitionally frivolous).

## Pro Se Response

Wellman has filed a pro se response to the *Anders* brief, but as we find there are non-frivolous issues that counsel must address, we may not address the response. "[I]n the specific context of *Anders,* the United States Supreme Court has declared that, if a court determines that non-frivolous issues remain in an appeal, it must afford an indigent defendant the assistance of counsel **prior to decision.**" *Commonwealth v. Orellana*, 86 A.3d 877, 882 n.7 (Pa. Super. 2014) (emphasis in original); *see also Commonwealth v. Cook*, 175 A.3d 345, 351 (Pa. Super. 2017) (reviewing pro se response only after determining that the issues raised in the *Anders* brief were frivolous).

## Conclusion

Based on our conclusion that counsel raised a non-frivolous issue in his *Anders* brief, we need not probe the record for additional non-frivolous issues. *See Tejada*, 176 A.3d at 362 (finding that panel did not have to independently examine the record for additional issues of merit where counsel was directed to file merits brief due to a finding that one of the issues set forth in the *Anders* brief was not frivolous).[3]

---

[3] The *Tejada* Court further noted that its conclusion directing a merits brief "does not represent sub silentio a conclusion that no other arguably meritorious issues exist." *Tejada*, 176 A.3d at 362.

Counsel's petition to withdraw is denied.  Counsel shall file a merits brief concerning the validity of the conviction for conspiracy to commit second-degree homicide, as well as any other non-frivolous issues that counsel may identify, within thirty days of the date of this decision.  The Commonwealth shall have thirty days thereafter to file a reply.  Panel jurisdiction retained.